IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | Criminal No. 1:20-cr-00018 |
| ) | |
| MELQUAN BARNETT   ) | |

## MOTION FOR ORDER AUTHORIZING
## PRETRIAL RELEASE OF DEFENDANT

The Defendant, Melquan Barnett, by and through his counsel, Charles Kwalonue Sunwabe, Jr., files this Motion for Order Authorizing Pretrial Release of Defendant. In support hereof, the Defendant states as follows:

Background

1.  The Defendant is a 28-year-old man recently arrested in connection with the recent Black Lives Matter protests in Erie, Pennsylvania. The government has charged the Defendant with arson and attempted arson. The Defendant is presumed innocent. No building was burned during the incident, and there was virtually no property damage. The owner of the coffee shop has stated publicly that she "would like to see the federal charge against Barnett dismissed and the case handled in state court, where penalties are generally less stringent." Exhibit A. Accordingly, Defendant respectfully seeks a prompt hearing.

2.  The magistrate has issued a pretrial order recommending that the Defendant be held in jail without bail, pending trial (the "Detention Order"). ECF Doc. No. 8.

3. The Defendant respectfully requests that the Court reconsider such order, and release the Defendant into his mother's custody, pending trial pursuant to the Bail Reform Act, 18 U.S.C. § 3141 et seq.

## I. It is proper to release the Defendant pursuant to the guidelines set forth in the Bail Reform Act.

4. The Bail Reform Act authorizes a criminal defendant to ask a district court to review the findings of a magistrate court *de novo* with respect to pretrial detention.

5. According to the U.S. Supreme Court, pretrial detention is an "exception" to the "norm" of release. *United States v. Salerno*, 481 U.S. 739, 755 (1987).

6. As explained by the court, pretrial detention -- as ordered in this case -- is a "grave invasion of the most fundamental of all personal liberties occurs." *United States v. Perry*, 788 F.2d 100, 114 (3d Cir. 1986).

7. Pursuant to the Bail Reform Act, "only a limited group of offenders . . . should be detained pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225, at 7 (1984)).

8. This Motion asks the Court to revoke the findings of the magistrate court in the Detention Order based on the tenets of the act.

**A.    The Magistrate Judge erred when he incorrectly placed the burden of presumption on the defense under 18 U.S.C. § 3142(e)(2).**

9.    According to the Bail Reform Act, detention should be presumed only with a few types of offenses. Here, the magistrate applied the presumption under 18 U.S.C. § 3142(e)(2) (2020). But, this subsection requires more than a finding that arson is a crime of violence. It requires <u>all of the following</u>:

A. 18 U.S.C. § 3142(e)(2): That the Defendant is charged with a crime outlined in § 3142(f)(1). Here, the crime charged is arson and the Court found, over defense objection, that this constituted a crime of violence. The magistrate court noted the same on the Detention Order, checking (only) the box for "crime of violence" as the reason for the rebuttable presumption.

B. 18 U.S.C. § 3142(e)(2)(A): That the person has been previously convicted of a federal offense (or state equivalent) of an offense listed in § 3142(f)(1). The magistrate court made no finding at all on this point. This statutory requirement for the instant presumption was not met and it was not checked off on the Detention Order.

C. 18 U.S.C. § 3142(e)(2)(B): That the previous conviction occurred while the person was out on release pending trial. This statutory requirement for the instant presumption was not met and it was not checked off on the Detention Order.

D. 18 U.S.C. § 3142(e)(2)(C): That not more than five years has elapsed since the date of the conviction or release from imprisonment. This statutory requirement for the instant presumption was not met and it was not checked off on the Detention Order.

11. As the above statute indicates, there is a presumption of incarceration only with a few limited categories of offense. In this matter, the requirements were not met. (*see sentencing order*).

12. In the Detention Order, the magistrate judge only checked off one of four requirements necessary for the invocation of the rebuttal presumption under the within statute. Id. The other significant requirements of the statute were not checked off by the judge.

13. Equally important, the facts of this case do not support any findings as to the remaining requirements of the statute. Id. Put simply, this is not a rebuttal presumption case and the honorable magistrate inappropriately placed the presumption on the defense.

14. By doing this, the magistrate incorrectly recommended that the Defendant be detained.

15. Mr. Barnett respectfully asks this court to reverse the magistrate and release him from detention.

### B. The Detention Order incorrectly assumed that the defense had not rebutted the presumption of detention.

10. In his order, the magistrate found that the defense had not rebutted the presumption of detention. (see detention order).

11. However, numerous cases have held that defendants can rebut the presumption by presenting "credible evidence" sufficient to rebut the presumption of detention. *U.S. v. Perry*, 788 F.2d 100 (3d Cir. 1986).

12. The requirement of "some credible evidence" is a "relatively light" burden that is very "easy to meet." *United States v. Griffin*, No. 07-02, 2007 WL 510140, at *2 (W.D. Pa. Feb. 12, 2007) (Cohill, J.) (internal quotations omitted).

13. In this case, the defense met its burden of production when the Defendant's attorney, Charles K. Sunwabe, explained that the Defendant's mother was willing and able to serve as a third-party custodian until the conclusion of this matter.

14. While Defendant's mother did not appear at the hearing due to her work schedule, Pretrial Services testified that they had spoken to the mother, recommended that the Defendant be released to her custody. (See Pretrial Services report).

15. The Defendant is also <u>not</u> a flight risk, as he voluntarily turned himself in to Erie County Police Department in a timely manner once he learned that he was facing charges stemming from the April demonstration.

16.     Equally important, the Defendant does not possess the sophistication or means to be a flight risk.  He does not have the financial means to undertake such as endeavor. The Defendant is indigent.  This fact is buttressed by the findings of Pretrial Service, after their investigation of the Defendant's financial records.  Id.

17.     As reflected in the Pretrial Services report, Defendant is a native of Erie, Pennsylvania.  He is a father of two sons and recently lost his minor daughter to the COVID-19 virus.  His siblings, father, cousins, and aunts are all residents of Erie. Id.

18.     All of this evidence warrants the Defendant's immediate release, pending trial.  The Third Circuit has held that a defendant need only produce "some credible evidence that he will appear and will not pose a threat to the community." *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986).

19.     It is long held that the presumption of detention can be rebutted by "*any evidence* favorable to a defendant that comes within a category listed in § 3142(g) . . . ." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (emphasis added). As long as a defendant "come[s] forward with some evidence that [the defendant] will not flee or endanger the community if released," the presumption of flight risk and dangerousness is definitively rebutted. *Id*. (emphasis added).

20.     Significantly, it is rebutted as soon as the defense's burden of production is met.  *Id*. (discussing *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985)).  The government bears the burden of persuasion at all times.  *Id*.

21.     During the detention hearing in this matter, the defense met its burden of production. The defendant presented evidence that he is not a flight risk, and his position was supported by the recommendation of Pretrial Services.

22.     Accordingly, Mr. Barnett, respectfully asks this Court to reverse the finding that the defense did not rebut the presumption of detention.

### C.     **The government has failed to meet its burden of persuasion.**

23.     As indicated above, the government has the burden of persuasion that Mr. Barnett is a danger to the community. The government has not met such burden.

24.     The United States presented no live, or real testimony and rested solely on the indictment, which reduces the weight of its evidence. The United States' proffer consisted entirely of the charging documents against Mr. Barnett.

25.     The charging documents are solely indicative of the existence of *probable cause*. As this court knows, the required standard is for the prosecution to show the existence of danger to the community by "clear and convincing evidence". *U.S. v. Jamal*, 285 SUPP. 2d 1221 (D. Ariz. 2003), *citing U.S. v. Himler*, 797 F.2d 156 (3rd Circ. 1986).

26.     By definition, a proffer of the charging documents is insufficient to find danger to the community by clear and convincing evidence -- because this is a higher standard than probable cause.

27.     This is particularly true when one compares the within standard with Mr. Barnett's presumption of innocence.

28.     According to the U.S. Supreme Court, "the Government must point to more than the mere indictment." *U.S. v. Jamal, supra.*

29.     The standard of clear and convincing evidence is evidence that provides a "high degree of certainty." *U.S. v. Paulino*, 2018 WL 3946451 (S.D.N.Y. 2018); *U.S. v. Chimurenga*, 760 F.2d 400 (2d Circ. 1985). There must be clear and convincing evidence that the defendant actually poses a danger. A theoretical explanation or speculation that a particular defendant poses a danger is not sufficient. *U.S. v. Patriarca*, 948 F.2d 789 (1st Circ. 1991) (mafia boss in theory was highly intimidating and dangerous character, but the government did not demonstrate that *this b*oss posed significant danger that could not be overcome with appropriate conditions; *U.S. v. Marquez*, 2018 WL 4773152 (N.D. Cal. 2018) (gun sale defendant was not a danger because there was no evidence defendant had access to them; *U.S. v. Miller*, 2018 WL 6977619 (S.D. Fla. 2018) (once drug dealer was arrested, other drug dealers avoid defendant).

30.     An analysis of the above case law makes abundantly clear that the United States failed woefully to demonstrate via clear and convincing evidence that Mr. Barnett poses actual danger to the community.

31.     Nothing produced by the United States at the detention hearing remotely supports the presumption that Mr. Barnett would pose a danger to the community.

32. There are presently no demonstrations ongoing in the County of Erie in Western Pennsylvania. Even if demonstrations were continuing, there is no indication that Mr. Barnett would participate, and that such participation would endanger the community.

33. As indicated at the hearing, Mr. Barnett will not have access to fire setting devices or instruments; he will be in the custody of his mother and his movements, activities will be severely curtailed.

34. As a condition of his release, he will not be permitted to have contacts with individuals who are known to have either planned or participated in the demonstrated that is at the core of the within matter. He will reside at his mother's residence and will be monitored by Pretrial Services.

35. Thus, it is fairly easy to effectively ensure that Mr. Barnett will not engage in any conduct dangerous to the community, if he were to be released.

36. This option was not considered by the magistrate judge.

37. Accordingly, Mr. Barnett respectfully asks this court to vacate the magistrate judge's findings that no conditions exist that would ensure the safety of the community.

38. Legally, a defendant need not "demonstrate that [the type of crime charged] is not dangerous to the community" to rebut the presumption of dangerousness. *Dominguez*, 783 F.2d at 706. In *Dominguez*, a district court was reversed by the Seventh Circuit for expecting the defendants to provide evidence that

their participation in a narcotics distribution scheme was not a danger to the community. *Id.* As the court noted: "Under the district court's interpretation, few if any defendants in narcotics cases could ever rebut the presumption of dangerousness and thereby defeat pretrial detention." *Id.*

39. Oftentimes, judges detain defendants based solely on the dangerousness inherent in the offense with which they are charged. Detention on that ground is improper. "A defendant cannot be detained as dangerous under § 3142(e) . . . unless a finding is made that no release conditions "will reasonably assure…the safety of the community…" (emphasis added). *Id.*

40. Instead, this Court must analyze the defendant's individual characteristics under § 3142(g). Due process also requires individualized determinations.

41. In presumption cases, the Court is forbidden from solely relying on the weight of the evidence purposely to detain a presumption defendant. Viewed in this way, the "weight of the evidence" is the "least important" of the various § 3142(g) factors. *See, e.g.*, *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990). "How guilty" someone is does not matter for purposes of detention. The weight of the evidence is relevant only in relation to the types of conditions that can and should be set in that specific case. Id.

42. In the instant case, Mr. Barnett respectfully disputes the finding of danger to the safety of the community.

43.     Where such a finding is made, the court must proceed via a second step and determine if there are conditions that exists that can mitigate the danger and ensure the safety of the community.

44.     To this end, Mr. Barnett averred during this detention hearing that he would reside with his mother and would scrupulously abide by the conditions imposed. He does not object to electronic monitoring, as suggested by Pretrial Services; an endless list of precautionary measures were suggested by pretrial services and the defendant acceded to all of them.

## II.     **It is appropriate to release the Defendant due to the ongoing COVID 19 pandemic**.

45.     As of July 20, 2020, COVID-19 remains a global health threat. Globally, the virus has killed thousands of people. Tragically, the virus is spreading exponentially; the virus is present in all 50 states, including Pennsylvania.

46.     While Pennsylvania has partially the stay at home order, strong social distancing rules remain in place. The virus is present and spreading in Erie County, Pennsylvania.

47.     As noted in the Pretrial Services report, Mr. Barnett has health issues which make him vulnerable to the virus. In addition, Mr. Barnett recently lost his infant daughter to the COVID-19 virus.

48.     The proximity of persons at the prison poses risks to the inmates, prison guards and also to attorneys who routinely require access to their clients for trial and other trial related preparations purposes.

49.     In the instant case, the pandemic presents a compelling problem on two fronts: Mr. Barnett's attorney -- Charles Sunwabe -- does not feel safe enough during prison visits to communicate effectively with the Defendant at such location. This is partially due to the relaxed use of masks at the prison.

50.     Attorney Sunwabe has two children who suffer from asthma. Asthma is a significant risk factor in the ongoing COVID-19 Pandemic.

51.     The recent death of Mr. Barnett's daughter from COVID-19 in May -- coupled with the relaxed protections at the jail -- exposes the Defendant and his counsel to the real risks of being infected with the virus.

52.     Across the United States, federal courts have found the COVID-19 pandemic is a "compelling reason" justifying temporary release under 18 U.S.C. 3142(i).

53.     This is a distinct legal basis for release; separate from the § 3142(f) determination. For example, In *U.S. v. Robert B. Mahan, Jr.*, Chief Magistrate Judge of the District of Idaho temporarily released a defendant to live with his mother because of the pandemic where the defendant was charged with Conspiracy to Distribute Methamphetamine. This ruling occurred in spite of the following: (1) the defendant was detained for a drug offense carrying a statutory mandatory min of ten

years imprisonment; (2) the Defendant spent much of his adult life in prison, having been convicted, serially, of drug trafficking, aggravated assault, possession of a firearm by a prohibited person, and other offenses; and (3) the defendant had committed several of these offenses while on state parole.  The risk he faced from COVID-19 while being asthmatic was "compelling" because it endangered his life and transmission in a prison setting was inevitable.  *U.S. v. Mahan*, 2020 WL 1846789, No. 19-CR-233, D. Idaho, Bush, C.J., Apr. 10, 2020.

54. The risks of transmission of COVID-19 in Erie are identical to the *Mahan* case.

55. At the juncture in these proceeding, defense counsel is afraid to routinely visit his client in jail, due to the pandemic.  This is significantly impacting the defense's ability to adequately prepare for this trial and to confer with Mr. Barnett in a timely manner.

56. It is important to note that telephone conversation between Mr. Barnett and Attorney Sunwabe are oftentimes challenging (as the phone is not clear and is difficult to understand).

## Conclusion

57. The Bail Reform Act favors and mandates pretrial release. Doubts regarding the propriety of release must be resolve by the Court in the defendant's favor." *U.S. v. Sanchez-Martinez*, 2013 WL 3662871 (D.Col. 2013); *U.S. v. Dany*, 2013

WL 4119425 (N.D. Cal. 2013) (pretrial release should be denied "only in rare circumstances").

58. Mr. Barnett presented sufficient evidence at his detention hearing that conditions exist that can mitigate any perceived risk of danger to the safety of the community. Further, the burden always remains with the government and it was not met in this case.

WHEREFORE, for the reasons outlined herein, the Defendant respectfully asks this Court to reverse the magistrate court's Detention Order and release him to the third-party custody of his mother, on electronic monitoring, in addition to ordering all other conditions that the Court deems necessary.

Respectfully submitted,

*/s/Charles Kwalonue Sunwabe, Jr.*
Charles Kwalonue Sunwabe Jr., M. A. Esq.
SUNWABE LAW LLC
1001 State Street. Suite 524
Erie, Pennsylvania 16501
TELE: 814-367-4313