IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 20-18 Erie |
| MELQUAN BARNETT | |

**RESPONSE TO DEFENDANT'S MOTION FOR
ORDER AUTHORIZING RELEASE OF DEFENDANT**

The defendant, Melquan Barnett, is charged in a one count Indictment with maliciously damaging and attempting to damage and destroy, by means of fire, a building used in interstate commerce or in any activity affecting interstate commerce, namely Ember + Forge, located at 401 State Street in Erie, in violation of Title 18, United States Code, Section 844(i).

In conjunction with the filing of a Complaint against Barnett on June 3, 2020, the United States requested that Barnett be detained pending trial. Barnett opposed the prosecution's detention request and sought release on bail. After a detention hearing on June 8, 2020, United States Magistrate Judge Richard Lanzillo denied Barnett's release request and issued an Order of Detention Pending Trial with an addendum. (ECF Docs. 8 and 8-1). Magistrate Judge Lanzillo detained Barnett based on a finding that under the Bail Reform Act there was a presumption in favor of detention that Barnett had failed to rebut. Barnett was then indicted on June 9, 2020.

Barnett now seeks an order authorizing his release. Based upon the totality of the circumstances, Magistrate Judge Lanzillo's Order of Detention Pending Trial should stand in order to ensure the protection of the community. Barnett relies heavily upon the coffee shop owner's opinion that he should not be detained. Notably, he has not provided the opinion of the owner of the building that houses the coffee shop or those renting apartments above the coffee

shop. At trial the prosecution will not be required to prove that a victim agrees with the prosecution, nor is that required by the Bail Reform Act.

Likewise, the COVID-19 pandemic is not a basis to overturn Magistrate Judge Lanzillo's detention order. There have been no confirmed cases of COVID-19 at the Erie County Prison in months and procedures are in place to afford defense counsel meaningful access to Barnett, who has not demonstrated a particular vulnerability to the virus.

## **Factual Background**

On June 1, 2020, Detective Dave Walker of the Erie Police Department provided FBI Special Agent Cuba with video footage from public Facebook live videos and Ember + Forge for the evening of May 30, 2020, during the time when a riot was occurring on State Street and the surrounding area. The Facebook live video footage reviewed by your Special Agent Cuba depicted an African American male with black dread lock hair down to the middle of his back. The subject was wearing a white mask, white shirt, light blue jean jacket, black pants with a red and white stripe pattern down the side and red shoes. The video footage depicts this subject setting a fire inside of Ember + Forge after a window at Ember + Forge that faces State Street was shattered when another individual kicked the window.

Special Agent Cuba reviewed Ember + Forge video surveillance footage which depicts the same subject, wearing the same clothing and with the same physical appearance, setting a fire inside of Ember + Forge through a window which has been shattered. Special Agent Cuba obtained a still shot from the Ember + Forge footage of the subject who started the fire, which shows a neck tattoo on the left side of the subject's neck.



Although perhaps somewhat difficult to discern from the still shot, the video displays a clearer depiction of the subject's tattoos. Below is also a series of three still shots from the Ember + Forge video footage depicting the subject, subsequently identified as Melquan Barnett, setting the fire at Ember + Forge on May 30, 2020.



During Special Agent Cuba's review of additional Facebook public video footage from the area of State Street near City Hall in Erie on the evening of May 30, 2020, he identified the same African-American individual with dreadlock hair, not wearing a mask, wearing the same white shirt, light blue jean jacket, black pants with a stripe pattern down the side and red shoes. The subject's face is fully visible in this video footage. Officers of the Erie Police Department who are familiar with Melquan Barnett have reviewed this video footage and identified Melquan Barnett as the individual depicted in this video footage from State Street on May 30, 2020. Below is a still shot from that video footage.



Special Agent Cuba obtained Melquan Barnett's criminal history from the Commonwealth of Pennsylvania. As part of the booking process, photos of the arrestee are taken and included as part of the criminal history. Melquan Barnett's neck tattoo is depicted in the booking photo. The booking photo is included below. The neck tattoo depicted on the subject from the above included still shot from the Ember + Forge video footage is consistent with the neck tattoo depicted in Melquan Barnett's prior booking photo.



On June 1, 2020, Special Agent Cuba visited Ember + Forge and measured the height of a beige concrete mark or block on the front of the Ember + Forge building which faces State Street. This beige block is immediately adjacent to the exterior window through which the fire was set on May 30, 2020. The beige concrete block or mark was used as a reference point to determine the height of the subject, since identified as Melquan Barnett, who lit the fire at Ember + Forge on May 30, 2020. The reference point measures between approximately seventy (70) and seventy-eight (78) inches. According to Barnett's Pennsylvania driver's license, Barnett's height is listed as 6'00". Special Agent Cuba's review of the May 30, 2020, Facebook live footage of the arson at Ember + Forge shows the arson subject, later identified as Melquan Barnett, with a height that is very similar to the height listed on Barnett's Pennsylvania driver's license. The similarity is depicted in the below included still shot from the May 30, 2020 Facebook live footage of Ember + Forge and the height of the reference point depicted in the adjacent image of the beige block.



On June 2, 2020, ATF Special Agent/Certified Fire Investigator Matthew Regentin conducted a fire scene examination of Ember + Forge Coffee Shop.  Based on an analysis of the evidence collected, Special Agent Regentin has concluded that "the fire was caused by the manual introduction of an ignitable liquid, namely gasoline, to the counter top table on the west side of the interior of Ember + Forge coffee shop and the subsequent ignition of gasoline vapors by an open flame device."  Special Agent Regentin has classified the cause of the fire as "Icendiary."

## Argument

I. **Detention Presumptions and Standards of Review**

    A. **Initial Standard**

The Court "shall order the detention of the [defendant] before trial" if the Court finds, after a hearing, "that no condition or combination of conditions will reasonably assure the

appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). It is presumed that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community if there is probable cause to believe that the defendant committed "an offense listed in section 2332b(g)(5)(B) of Title 18, United States Code, for which a maximum term of imprisonment of 10 years of more is prescribed …" 18 U.S.C. § 3142(e)(3)(C). A grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crimes with which he is charged. *See, e.g., United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (citation omitted). Despite defense counsel's protestation to the contrary, it is clear that the presumption in favor of detention applies to Barnett because he has been indicted for a violation of 18 U.S.C. § 844(i), an offense carrying a twenty year maximum term of imprisonment, which is listed in 18 U.S.C. § 2332b(g)(5)(B).

Once the presumption is invoked, the burden of production shifts to the defendant to rebut the presumption. *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986). The defendant must produce some credible evidence supporting his claim that he will appear and will not pose a threat to the community. *Carbone*, 793 F.2d at 560. The burden of persuasion remains with the government. *United States v. Perry*, 788 F.2d 100, 114-15 (3d Cir. 1986). Proof of risk of flight is subject to a preponderance of the evidence standard, whereas dangerousness is subject to a clear and convincing evidence standard. *Perry*, 788 F.2d at 114-15.

The factors a court must consider in determining detention versus pretrial release are:

   (1) the nature and circumstances of the offense charged, including whether the offense . . . involves a minor victim . . .;

   (2) the weight of the evidence against the person;

   (3) the history and characteristics of the person, including –

      (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community

ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

      (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State , or local law; and

  (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g)(1)-(4).

Finally, the presumption of detention, even if successfully rebutted by the defendant, remains a factor for consideration in determining whether to release or detain. *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991).

### B.    Standard of Review by the District Court

If a person is ordered detained by a magistrate judge, the person may file a motion for revocation or amendment of the order with the district court. 18 U.S.C. § 3145(b). The district judge reviews the magistrate judge's decision *de novo*. *See, e.g. United States v. Delker*, 757 F.2d 1390, 1393-95 (3d Cir. 1985). Nevertheless, the magistrate judge's decision and reasoning are to be give careful consideration where a transcript of the detention hearing is available. *Delker*, 757 F.2d at 1395 ("In most cases the district court will find it useful to consider carefully the decision and reasoning of the magistrate."). *De novo* review does not require an additional evidentiary hearing. *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir 1990) ("Clearly, the district court is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist."); *United States v. Brownlee*, 2011 WL2112535, *2 (W.D. Pa. 2011) (citations omitted). The district court may also consider any additional evidence or proffers submitted in conjunction with any supplemental proceedings. *Brownlee*, 2011 WL2112535 at *2 (quoting *United States v. Farris*, 2008 WL 1944131, *7 (W.D. Pa. 2008)).

**II.     A Detention Presumption Applies Here Which Has Not Been Rebutted and Detention is Appropriate Even if the Presumption Has Been Rebutted**

The government respectfully asks the Court to order the continued detention of Barnett after a *de novo* review of the record, including the Complaint and supporting Affidavit, the Indictment, the Pretrial Services Report and the transcript of the detention hearing. Barnett has not rebutted the presumption in favor of his detention and even if the Court finds the presumption has been rebutted, a consideration of the factors set forth in 18 U.S.C. § 3142(g) calls for his continued detention.

**A.     The Rebuttable Presumption Favors Detention of the Defendant and the Defendant Has Not Rebutted the Presumption**

The rebuttable presumption of detention applies in this case because Barnett is charged via indictment with violating 18 U.S.C. § 844(i), an offense which carries a maximum jail sentence of twenty years.[1] That offense is also listed in 18 U.S.C. § 2332b(g)(5)B). Therefore, under 18 U.S.C. § 3142(e)(3)(C), a rebuttable presumption applies in favor of Barnett's detention.

At the detention hearing, the United States argued mainly that the detention presumption was implicated here because arson is a crime of violence. Magistrate Judge Lanzillo in his addendum convincingly demonstrated that arson is a crime of violence under the parameters of the Bail Reform Act. This Court need not rely on that analysis to find that a detention presumption is implicated here because the presumption is clearly triggered in that Barnett has been indicted for a crime which is listed in 18 U.S.C. § 2332b(g)(5)(B) and carries a twenty year maximum possible punishment.

---

[1] The indictment is sufficient in itself to establish probable cause. *Stricklin*, 932 F.2d at 1355.

Defense counsel argues that the detention presumption does not apply here even if arson is a crime of violence because all of the requirements of 18 U.S.C. § 3142(e)(2) were not met by the prosecution at the detention hearing and Magistrate Judge Lanzillo indicated in his detention order that there was a detention presumption under 18 U.S.C. § 3142(e)(2).  While it does appear that Magistrate Judge Lanzillo found the detention presumption arose under Section 3142(e)(2), that argument is beside the point because the detention presumption is clearly applicable under Section 3142(e)(3)(C).  Thus, while arson is plainly a crime of violence for purposes of the Bail Reform Act, that determination is not necessary for the detention presumption to apply to Barnett.  Further, while defense counsel appears to be correct that the prosecution was required to establish all of the subparts of Section 3142(e)(2) in order for the presumption to apply under that section, that argument is ultimately irrelevant because the presumption plainly arises in this case under Section 3142(e)(3)(C) by virtue of Barnett's indictment for a crime listed in 18 U.S.C. § 2332b(g)(5)(B) that carries a maximum possible penalty greater than ten years.

Magistrate Judge Lanzillo correctly found that Barnett had failed to rebut the presumption in favor of detention.  At the detention hearing, defense counsel attempted to rebut the presumption by arguing that: 1) arson was not a crime of violence; 2) Barnett should not be detained in light of the COVID-19 pandemic; 3) Barnett is not a flight risk; 4) the request for detention is political in nature; and 5) Barnett's mother was willing and able to act as a third party custodian.  (N.T. Detention hearing, p. 4-8).

Barnett's mother did not attend the detention hearing, which was held via Zoom, because she had an appointment (N.T. Detention hearing p. 13).  Thus, defense counsel offered nothing at the hearing other than the bare assertion that Barnett's mother would act as third party custodian to rebut the presumption in favor of detention.  If that were enough to rebut the presumption then

11

the presumption would be rendered meaningless. The other arguments in support of release were just that, arguments in support of release unsupported by any evidence.

Barnett's claim that he was not a risk of flight was irrelevant because the government was not seeking to detain him on that basis. Defense counsel's assertion that arson is not a crime of violence is contrary to precedent and the definition of the term in 18 U.S.C. § 3156(a)(4).

Barnett offered no evidence to suggest that he was especially susceptible to COVID-19 and the Pretrial Service Report indicates that Barnett reported that "although his overall health is good, he suffers from residual pain from a gunshot wound he sustained in 2013." (Pretrial Services Report, p. 3) Barnett also indicated that he also suffers headaches from a concussion he sustained in February 2020. (Id.). Hence, Barnett offered nothing to Pretrial Services and defense counsel proffered nothing at the hearing to suggest that Barnett was especially vulnerable to COVID-19. Nor is there any heightened risk from COVID-19 at the Erie County Prison, which has not had an inmate or staff member test positive for the virus in months.

Lastly, the prosecution's detention request does not stem from politics. Rather, the request to detain Barnett arises from Barnett's conduct during a riot, which had nothing to do with a peaceful protest.

      **B.    The Factors Set Forth in the Bail Reform Act Favor Detention**

            **1. The Nature and Circumstances of the Offenses**

The nature and circumstances of the offense for which Barnett is charged weigh heavily in favor of detention. When considering this factor, the Bail Reform Act specifically directs courts to factor into their consideration whether the defendant's offense is a crime of violence. 18 U.S.C. § 3142(g)(1). Arson is plainly a crime of violence under the parameters of the Bail Reform Act. *United States v. Mitchell*, 23 F.3d 1, 2, n. 3 (1st Cir. 1994) (*citing United States v.*

*Marzullo*, 780 F.Supp. 658, 662-65 (W.D. Mo. 1991); *United States v. Shaker*, 665 F.Supp. 698, 702 n. 4 (N.D. Ind. 1987) (further citations omitted).

Barnett was not arrested for his involvement in a peaceful protest. During the course of a riot in downtown Erie, Barnett, with no regard for the safety of first responders and those in the building and surrounding area, set fire to a coffee shop. There have been no facts presented by the defense which mitigate the gravity of Barnett's conduct in this case. Based on these facts, this factor weighs heavily in favor of detention.

### 2. The Weight of the Evidence

The weight of the evidence also weighs in favor of detention. Barnett was captured on several different videos setting fire to the coffee shop. Law enforcement then took additional steps to verify Barnett's identity as the arsonist. First, they confirmed that Barnett, like the arsonist captured on video, has a neck tattoo. Second, they took measurements of the outside of the coffee shop and compared them to the height of the arsonist to confirm that the arsonist's height is very similar to Barnett's height. Third, Barnett has a distinctive hairstyle that matches the arsonist. Fourth, Barnett was wearing distinctive clothing which were not observed on any other rioters throughout the area where the rioting occurred. These facts coupled with the identification of Barnett as the arsonist by several law enforcement officers familiar with Barnett demonstrate the significant weight of the evidence against Barnett.

### 3. The History and Characteristics of the Defendant

The Bail Reform Act directs the courts to consider such things as the defendant's character, physical and mental conditions, family ties, employment, past conduct, past drug and alcohol abuse, and criminal history. By his own admission, Barnett has a very significant drug history. Barnett reported beginning marijuana use when he was 16 and being 19 when he first used crack cocaine. Barnett now apparently has a medical marijuana card and reported that he

last used crack cocaine about three months prior to his arrest in this case. Barnett also revealed that he participated in a juvenile outpatient substance abuse treatment program when he was 16 or 17, which plainly has not curbed his appetite for drugs.

Barnett also claims to suffer from various mental health issues including PTSD, depression and anxiety. None of these illnesses increase confidence in his ability to abide by release conditions.

Further, Barnett has minimal work history and a significant criminal history. Barnett was adjudicated delinquent at 16 years of age for felony criminal trespass and receiving stolen property as a first degree misdemeanor. As an adult, he has ten prior involvements with the criminal justice system. He has convictions for false identification to law enforcement, criminal mischief, and minor possessory drug offenses. Barnett has also been cited four times for driving with a suspended license, demonstrating a persistent refusal to follow the law. His prolonged criminal history, mental health issues and drug use do not weigh in favor of release.

### 4. The Nature and Seriousness of the Danger to Any Person or the Community that Would Be Posed by the Defendant's Release

The protection of the community should be paramount in the Court's consideration given the nature and seriousness of the danger to the community should Barnett be released. A danger to the community does not only include physical harm or violent behavior. *United States v. McCall*, 2018 WL 838968, *3 (W.D. Pa. Feb. 13, 2018); *United States v. Schenberger*, 498 F.Supp.2d 738, 742 (D.N.J. 2007). The concept of "safety" may include non-physical harm. *United States v. Provenzano,* 605 F.2d 85, 95 (3d Cir.1979) (holding that "[a] defendant's propensity to commit crime generally, even if the resulting harm would be not solely physical, may constitute sufficient risk of danger to come within contemplation of [the Bail Reform Act])"; *see also* S.Rep. No. 225, 98th Cong., 2d. Sess. 12, reprinted in 1984 U.S. Code Cong. &

Ad. News 3182, 3195 ("The [Judiciary] Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence").

In assessing a defendant's danger to the community, the Third Circuit directs courts to look at, *inter alia*, the nature and circumstances of the crime, the defendant's prior criminal record, and any other factors indicative of the defendant's propensity to commit crime generally, or otherwise to endanger the community. *Provenzano*, 605 F.2d at 96.

As already discussed, the nature and circumstances of Barnett's crime, combined with his substance abuse history, mental health issues and prior criminal record, demonstrate Barnett's significant danger to the community. With no thought whatsoever to the harm his conduct could have caused, not only to occupants of the building and others in the area but also to first responders, Barnett set fire to a downtown Erie business. His blatant disregard for others while engaged in a riot conclusively demonstrates that he is a danger to the community who should not be released. A drug using arsonist with mental health issues and a significant criminal history is not a good candidate for release just because his mother, who could not be bothered to attend the Zoom detention hearing, says she will watch him.

### D. The COVID-19 Pandemic Is Not a Basis on Which to Release Barnett

Barnett claims that the Pretrial Services report identifies health issues which make him vulnerable to the COVID-19 virus. (Doc. 20. p. 11). He does not identify those health issues, and, as mentioned above, the Pretrial Services Report indicates that Barnett stated that he was in overall good health other than pain from a gunshot wound and headaches from a relatively recent concussion. Those health issues do not make Barnett more vulnerable to COVID-19, especially because he is only 28 years of age.

There have been no positive tests for COVID-19 for either inmates or staff at the Erie County Prison for months and the presence of the virus overall at the facility has been extremely

limited.  Several months ago, prior to Barnett's detention in this case, two inmates who were known to have the virus upon commitment were immediately isolated due to effective intake screening.  Shortly thereafter, prison officials received word that another inmate may have been exposed to the virus by a family member.  That inmate was already in enhanced isolation, again due to effective screening by prison officials.  That inmate was then bailed out of the facility the next day.  There have been no other positive inmate tests to date.  Only one staff member has tested positive but that individual was not assigned to the Erie County Prison.

Barnett also mentions the recent death of his daughter from COVID-19 in support of his release motion.  While her death is a tragedy that no parent should have to endure, Barnett does not explain why that tragic event has any relevance to a current determination of his motion for release.  It does not make him more or less amenable to release.  The Court's focus should be on the factors delineated in the Bail Reform Act, which do not encompass the circumstances involving Barnett's daughter.

Defense counsel also argues that due to family concerns he has particular vulnerability to the virus and the pandemic has hampered his ability to effectively meet with his client.  These concerns are not a basis to release Barnett because the Erie County Prison had instituted procedures affording defense counsel safeguards against exposure to the virus from their detained clients.  The Erie County Prison provides attorneys the ability to have their phone number marked private so that they may speak to their client over the phone without third party recording or intrusion.  Counsel are also afforded the ability to have a private visit with their client over video.  Thus, defense counsel's family health concerns are effectively addressed by the Erie County Prison procedures, which also afford defense counsel a full, unimpeded opportunity to meet with Barnett.  These protocols, coupled with the fact that there are currently

no inmates or staff positive for COVID-19 at the Erie County Prison, mean that the pandemic is not a basis for releasing Barnett.

Moreover, section 3142(f) is solely concerned with the risks of flight and danger to the community posed by the defendant's release, not with the danger or risk to the defendant. *United States v. Clark,* 2020 WL 1446895 at *3 (D. Kan. Mar. 25, 2020) (noting that § 3142(f) is solely concerned with risk of flight and danger to community posted by defendant not by risk to defendant's health). *See also United States v, Hanson*, 2020 WL 1692967 at *2 (D. Mont., April 7, 2020) (noting that "[i]n reviewing [COVID-19 related release motions], several courts have recognized that release based on a defendant's concerns of heightened COVID-19 risk if incarcerated is not appropriately addressed under § 3142(f).").

As multiple Judges in the Western District of Pennsylvania have noted, the potential for risk of exposure to COVID-19 exists everywhere in the community, not just at the Erie County Prison or other jails—such is the nature of a global pandemic. *United States v. David Francis*, 2:17-cr-00301-JFC, Doc. No. 204 (W.D.Pa. April 20, 2020); *United States v. Pritchett*, CR 19-280, 2020 WL 1640280, at *3 (W.D.Pa. April 2, 2020) (noting "potential [for exposure] unfortunately exists anywhere in the community"); *United States v. Loveings*, 2020 WL 1501859, *3 (W.D.Pa. March 30, 2020) (risk of exposure exists throughout community); *United States v. Jones*, CR19-249, 2020 WL 1511221, at *3 (W.D.Pa. March 29, 2020) (noting risk of exposure exists throughout community).

Barnett is currently at a facility where no inmates or staff have tested positive for COVID-19 for months. Thus, his risk of contracting the virus is no greater while detained that it would be upon release back into the Erie community, which continues to have new positive tests for the virus daily.

### E.  Barnett's Reliance Upon the Opinion of Ms. Kirby is Misplaced

Barnett relies heavily upon the opinion of the owner of Ember + Forge, Hannah Kirby, that he should be released, even providing a letter from her in support of his motion.  Notably, Barnett did not apparently seek the opinion of the owner of the building in which the coffee shop is housed, nor did he note for the Court the presence of multiple apartments above the coffee shop or seek the opinion of those apartment renters.

On July 31, 2020, FBI Special Agent Cuba interviewed Donald Kidder who owns the building in which Ember + Forge is located and the adjacent building.  Mr. Kidder informed Special Agent Cuba that there are ten apartment units above Ember + Forge, nine of which are occupied by tenants.  Mr. Kidder also indicated that he wants the law to be enforced and does not agree with Ms. Kirby's opinion about the federal prosecution of Mr. Barnett.  He further noted that the fire at Ember + Forge had the potential to be a lot worse if it had not been extinguished as quickly as it was.

While victim input is always something the Court should consider on any matter, Ms. Kirby is not the only victim in this case and her personal opinion does not outweigh the opinion of the building owner or the considerations delineated in the Bail Reform Act.  If after considering all of the facts and circumstances within the parameters of the analysis required by the Bail Reform Act, the Court finds that Barnett should be detained, then Ms. Kirby's opinion on the matter or the opinion of any other individual involved in the case, would not be sufficient to overcome or change the Court's reasoned analysis.

### III. Conclusion

Wherefore, for all of the foregoing reasons, Barnett should remain detained pending the resolution of his case.

Respectfully submitted,

SCOTT W. BRADY
United States Attorney


s/ *Christian A. Trabold*
CHRISTIAN A. TRABOLD
Assistant U.S. Attorney
PA ID No. 75013