# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:20-cr-00018 |
| | ) | |
| MELQUANT BARNETT | ) | |

## MOTION TO DISMISS CHARGES ON
## GROUNDS OF SELECTIVE PROSECUTION

The Defendant, Melquan Barnett, by and through counsel, files this motion for an order dismissing this case on grounds of selective prosecution. In support hereof, the Defendant states as follows:

### Background

1.     The Defendant is a 23-year-old African American man, who participated in the Black Lives Matter protests during the early summer of 2020.

2.     The government has charged Mr. Barnett with arson pursuant to 18 U.S.C § 844(i). The indictment contends that Mr. Barnett attempted to burn down a coffee shop in Erie, Pennsylvania, in violation of Section 844(i). Specifically, the statute states as follows:

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both . . .

3.     The Defendant respectfully asks the Court to dismiss the case on grounds of selective prosecution by the government.

## ARGUMENT

I. **This Court should dismiss the indictment on the ground of selective prosecution.**

4.     The United States Supreme Court has recognized a defense to a criminal charge based on protected First Amendment activity. This defense, often referred to as "a selective prosecution defense," is not a defense on the merit of the criminal charge itself.  Rather, it is an independent assertion that the prosecution has brought the charge for purposes prohibited by the federal constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996).

5.     As explained by the U.S. Supreme Court, "the decision to prosecute <u>may not be deliberately based</u> upon an unjustifiable standard such as race, religion, or other arbitrary classification, including the exercise of protected statutory and constitutional rights." *Wayte v. United State*, 470 U.S. 598, 608 (1985).  *See also United States v. P.H.E., Inc.,* 965 F.2d 848, 853 (10Cir.1992) (prosecution "motivated by a desire to discourage expressions protection by the First Amendment must be enjoined or dismissed, irrespective of whether the challenged action could possibly be found to be unlawful.").

6.     In establishing a selective prosecution claim, a defendant must demonstrate that the federal prosecutorial policy "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Armstrong*, 517 U.S. at 465 (quoting Wayte, 470 U.S. at 6608).

7.     Mr. Barnett's claim of selective prosecution satisfies both of the above required elements.

## II.     **Mr. Barnett is a target of federal prosecution because of the exercise of a protected statutory and constitutional rights.**

8.     The discriminatory purpose that motivated the federal decision to prosecute Mr. Barnett is glaring:  Federal authorities across the United States have emphatically stated that they intend to prosecute cases connected to the First Amendment activities surrounding the death of George Floyd.

9.     In this case, the government would not have prosecuted Mr. Barnett, but for his First Amendment activities. *Wayte,* 470 U.S. at 608 (noting that additional evidence of discriminatory purpose is not necessary when there is "an overtly discriminatory classification").

10.     We know this because the attorney general who commenced the case, William Barr, told his assistant attorney generals to bring this case for political reasons, because the Trump administration disagreed with the point of view of the demostrators.  *See Aruna Viswanatha* & *Sadie Gurman, Barr Tells Prosecutors to Consider Charging Violent Prosecutors with Sedition,* The Wall Street Journal (Sep. 17, 2020),  https://www.wsj.com/articles/barr-tells-prosecutors-to-consider-charging-violent-protesters-with-sedition-11600276683.

11.     Federal prosecutors -- including U.S. Attorney Scott Brady -- have judiciously followed the directive of former Attorney General William Barr.

12.    Recently, the Justice Department has bragged that "more than 300 individuals in 29 states including the District of Columbia have been charged for crimes committed adjacent to or under the guise of peaceful demonstrations since the end of May 2020."  Dept of Justice, Office of Public Affairs, Over 300 People Facing Federal Charges for Crimes During Nationwide Demonstration (Sept.24,2020).    https://www.justice.gov/opa/pr/over-300-people-  facing-  federal- charges- crimes- committed-during-nationwide-demonstrations.

13.    The above-described political prosecutions are contrary to the normal standards for prosecution, as set forth in the Justice Department's Justice Manual.

14.    Specifically, The Department of Justice's Justice Manual directs federal prosecutors to decline to prosecute if "the prosecution would serve no substantial federal interest" or "if the person is subject to effective prosecution in another jurisdiction." U.S. Dept. of Justice, Justice Manual § 9-27.220 (2021).

15.    In the instant case, Mr. Barnett was subject to state prosecution in the Commonwealth of Pennsylvania.  In fact, formal proceedings against Mr. Barnett had *already begun* when federal authorities moved in and took over the case.

16.    The Department's Justice Manual lists does not support a finding of a substantial federal interest in this matter. *Id*. If anything, the Department's Justice Manual stands in stark opposition to the finding of a substantial federal interest in this matter.

17.    Oftentimes, a finding of substantial federal interest in prosecuting such a case is based on the following criterions:  the nature and seriousness of the

offense; the person's culpability in connection with the offense; the person's history with respect to criminal activity; the person's personal circumstances; and the probable existence of other consequences if the person is convicted. Id § 9-27-230.

18.     Here, the only consideration that weighed in favor of the federal government prosecuting stems from the *discriminatory purpose* advocated by former Attorney General Barr — notably, his directive that federal prosecutors should aggressively punish conduct relating to the protected First Amendment activities that sprung from the death of George Floyd.  *Id*.

19.     In the instant matter, every important factor points to a finding that Mr. Barnett would be subjected to an effective prosecution in state court.

20.     To buttress this point, the Justice Manual lists three cardinal considerations: the strength of the jurisdiction's interest, the ability and willingness to prosecute effectively, and the probable sentence upon conviction. Id § 9-27.240.

21.     In this matter, the Commonwealth of Pennsylvania had already charged Mr. Barnett with arson under the appropriate state law when the federal government intervened and subsequently charged Mr. Barnett.

22.     The Commonwealth of Pennsylvania has the relevant interest, ability, preparedness, and willingness in this matter to prosecute this case.  If Mr. Barnett is convicted on the within charge, the Commonwealth of Pennsylvania possesses the tools and ability to prosecute and would impose an appropriate sentence.

23.     In Erie County, Pennsylvania, arson cases are largely prosecuted in state court.

### III.   Federal Authorities have not prosecuted similarly situated white Defendants.

24.     To establish prosecution resulting in a race-based discriminatory effect, a defendant must make a "credible showing that similarly situated individuals of a different race are not being similarly prosecuted. *United States v. Jones*, 159 F. 3d 969, 977 (6th Cir.1998 (citing Armstrong 465).

25.     In the instant case, the indictment and public records make abundantly clear that individuals whose conduct was as severe as the alleged conduct of Mr. Barnett have <u>not</u> faced federal prosecution.

26.     For example, the video evidence from the Ember + Forge Coffee shop shows a Caucasian woman *smashing the window glass*. This allowed various protesters to throw stones, objects and set the Coffee Shop on fire.

27.     Incredibly, a Caucasian woman shattering of the window of Ember + Forge, which caused damage to the building was sufficient and did not get federal prosecution.

28.     The Caucasian woman's action (as demonstration by the video) is severe enough to warrant a federal prosecution. Yet, she is remarkably missing from the indictment and the federal complaint (F.C. ¶ 3.). There are no federal charges brought against her, and there is no credible explanation provided as to why she was not charged federally.

29.     During the demonstration on May 30, 2020, local police and federal authorities reported numerous damages. Specifically, businesses that operated

mainly around State Street were severally impacted.  The demonstration involved multitude of people from mixed backgrounds, race, and ethnicity. https://www.goerie.com/news/20200531/erie-police-lsquothis-violence-was-clearly-plannedrsquo.

30.    Data and news reporting from the demonstration points to a large gathering, routine arrests, and mostly local criminal charges. Interestingly, only two individuals were charged federally in Erie County, Pennsylvania. *Both individuals were African Americans*.

31.    As it relates to the charge of arson, this matter presents a rare case of federal arson prosecution in Erie County, Commonwealth of Pennsylvania.

32.    Relevant Erie county criminal records show that arson cases are usually prosecuted in state court. The Court Administer, Erie County, Pennsylvania does not maintain records for arson cases prosecuted locally. However, the District Attorney's office points out that arson cases in Erie County are limited.  The cases recently prosecuted in the county include Commonwealth v. Saunders, J-S58023-19 (Pa. Super. Ct. Jan. 21, 2020), Commonwealth v. Calipo, J-S21006-18 (Pa. Super. Ct. May 31, 2018) and a few other cases.

33.    In *Saunders*, the defendant was convicted of setting a vehicle on fire in the parking lot of the Eaton Reservoir. *Id.*  The Eaton Reservoir supplies water to homes, and businesses located in Northeast township.  An argument can be made that the businesses located in Northeast Township, Erie County have interstate business ties and connections. More telling, the conduct of setting a vehicle on fire

7

at the parking lot of a water supply reservoir is severe. Yet, federal authorities in Erie did not intervene and did not take over the case as they did in the case of Mr. Barnett. *Id.*

34.     In *Calipo*, the Defendant set her own property on fire. She later proceeded to extort money from Allstate Insurance in connected with her fraud. Allstate insurance operates and utilizes various articles of interstate commerce. Here, federal authorities in Erie did not prosecute Defendant Calipo for her crimes of arson although her conduct had negative bearing on interstate commerce. *Id.*

35.     Additionally, Federal authorities in Erie did not charged a white man, Jacob M. Miller for setting a pillow on fire inside a "Marshall Department Store" on July 20, 2020. Five pillows were burned, forcing the department store to be evacuated. Ultimately state police officers intervened and extinguished the fire. Man Arrested for Starting Fire inside Marshall's Store - Erie News Now | WICU and WSEE in Erie, PA

36.     The Marshall Department Store operates in interstate commerce, obtains merchandize via instrumentality of interstate commerce. The pillows including other merchandise that are sold in the department store have significant interstate commerce nexus and connections. The building itself has important nexus and connections to interstate commerce. *Jones v. United State*, 529 U.S. 848 (2000). See Broadly, Russell v. United States, 471 U.S. 858, 859, 862 (1985)), Bautista v. Attorney Gen. of U.S., No. 11-3942 at 21 (3d Cir. Feb. 28, 2014), Gulf Oil Corp. v. Copp Paving Co., 419 U.S. 186, 195, 95 S.Ct. 392, 398, 42 L.Ed.2d 378 (1974)(construing Clayton Act § 7). U.S. v. Coward, 151 F. Supp. 2d 544, 548 (E.D. Pa. 2001).

8

37.     The Marshall Department Store is an object of interstate commerce. *Id*. As an object of interstate commerce, the within department store is actively participating in interstate commerce in that it receives and sells merchandize that are manufactured, transported, and sold in interstate commerce. Yet, Miller is charged with multiple counts of aggravated arson at Commonwealth of Pennsylvania Dockett. No.0001497-2020. Miller is not charged federally and federal authorities in Erie County, Pennsylvania showed no interest in his case. *Id*.

38.     While the above cited cases are not comprehensive, they do point to patterns and practices of _less federal involvement_, and less federal prosecution for arson cases in Erie County, Pennsylvania.

39.     To date, there has been a few, if any, arson charges brought by the federal government in Erie County, Pennsylvania. Where such charges have been brought, the federal interest involved has been significant. *See Madeleine O'Neill's article, Tony Crawford pleaded guilty to setting the destructive Fire at a court hearing in June, Go Erie News (Dec. 9, 2019)* https://www.goerie.com/news/20191209/fredrsquos-beds-arson-case-ends-in-10-year-prison-sentence.

40.     Applying the cited county specific arson cases gives rise to one question regarding Mr. Barnett: Why did federal authorities in Western Pennsylvania rush to prosecute Mr. Barnett -- even though his alleged conduct created _minimal_ -- if any -- damage to the Ember + Forge Coffee Shop?  The answer to this question points in the direction of selective prosecution that has a racially discriminatory

effect and is motivated by an overzealous attempt to silence Mr. Barnett because of his participation in the May 30, 2020 demonstration.

## IV.   <u>Mr. Barnett is entitled to discovery</u>.

41.   As noted above, Mr. Barnett has established a case for selective prosecution in the instant case. Because of this, this Court should dismiss the charge against him.  If the government contends that its prosecutorial decision is not based on the exercise of protected statutory and constitutional rights, this court should permit Mr. Barnett full discovery.

42.   According to case law, a defendant is entitled discovery on a selective prosecution claim if he introduces "some evidence tending to show the existence of the essential elements of the defense."  *United States v. Schmucker*, 815, F. 2d 413, 418 (6the Cir. 1987); *Armstrong*, 517 U.S. at 468.

43.   Mr. Barnett has introduced "some evidence" of discriminatory purpose and effect, and thus is at least entitled to discovery to establish why he was prosecuted federal and to adequately prepare for a trial.

## <u>Conclusion</u>

41.   It is proper for the Court to dismiss this case on grounds of selective prosecution.

42.   Given the government's decision to charge only two black persons in connection with the protests -- and not to charge any white defendants -- the Defendant has shown a *prima facie* case of selective prosecution.

42.     The government is not permitted to base its prosecutorial decision on the basis of race and protected constitutional rights.

43.     If the government disputes the bases for its decision, the court should permit Mr. Barnett full discovery in this matter.

Respectfully submitted,

*/s/Charles Kwalonue Sunwabe, Jr.*
Charles Kwalonue Sunwabe Jr., M. A. Esq.

SUNWABE LAW LLC
1001 State Street. Suite 524
Erie, Pennsylvania 16501
Phone: (814) 367-4313