# EXHIBIT J

# JUNE 8, 2020 - DETENTION HEARING TRANSCRIPT

```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA      :
                              :
     v.                       :    Criminal No. 1:20-cr-18
                              :
MELQUAN BARNETT                :



     Transcript of proceedings on June 8th, 2020,
     United States District Court, Erie, Pennsylvania,
     before Magistrate Judge Richard A. Lanzillo.




APPEARANCES:

     For the Government:    U.S. Attorney's Office
                            Christian A. Trabold, Esquire
                            U.S. Courthouse
                            17 South Park Row, Room A320
                            Erie, PA 16501

     For the Defendant:     Charles Kwalonue Sunwabe, Jr.
                            Sunwabe Law, LLC
                            1001 State Street
                            Suite 524
                            Erie, PA 16501

     Court Reporter:        Janis L. Ferguson, RPR, CRR
                            17 South Park Row
                            Room A340
                            Erie, PA 16501



     Proceedings recorded by mechanical stenography;
transcript produced by computer-aided transcription.
```

1

|   |                                                                          |
|---|--------------------------------------------------------------------------|
| 1 | P R O C E E D I N G S                                                    |
| 2 | 1:34 p.m.                                                                |
| 3 | (Proceedings by Zoom, Defendant present with counsel.)                   |
| 4 | THE COURT: Good afternoon. This is the time set                          |
| 5 | for the detention hearing in the matter of United States                 |
| 6 | versus Melquan Barnett.                                                  |
| 7 | Let me first begin by taking the appearances of                          |
| 8 | counsel.                                                                 |
| 9 | Attorney Trabold, good afternoon.                                        |
| 10 | MR. TRABOLD: Good afternoon, Your Honor. Christian                      |
| 11 | Trabold on behalf of the United States. And I'm here today              |
| 12 | accompanied by FBI Special Agent Cuba.                                  |
| 13 | THE COURT: Very good. And Attorney Sunwabe, good                        |
| 14 | afternoon.                                                               |
| 15 | MR. SUNWABE: Good afternoon, Your Honor. Charles                        |
| 16 | Kwalonue Sunwabe, Junio,r on behalf of Mr. Melquan Barnett.             |
| 17 | THE COURT: All right. Mr. Barnett, as I explained                       |
| 18 | during the prior proceedings, the United States is seeking              |
| 19 | your detention pending trial in this matter. So I will turn             |
| 20 | to Attorney Trabold for proffer and evidence as he sees fit.            |
| 21 | MR. TRABOLD: Your Honor, if I may, I believe that                       |
| 22 | the defense should start, because I believe this is a                   |
| 23 | presumption case in favor of detention. So it's incumbent               |
| 24 | upon the defense to present reasons why Mr. Barnett shouldn't           |
| 25 | be detained or some evidence in favor of his release in the             |

```
 1   first instance.
 2           THE COURT:  I don't believe that there is a formal
 3   request for detention on file in this case.  There was an oral
 4   motion.  And this is proceeding under --
 5           MR. TRABOLD:  Your Honor, if I could just point you
 6   to the -- the subsection of the statute would be
 7   3142(e)(3)(C), where it says, "Any offense listed in Section
 8   2332(b)(g)(5)(B)," and that lists a variety of different
 9   offenses.  One of those would be the arson statute at Title
10   18, United States Code, Section 844(i).  And that offense
11   carries a 20-year max.
12               So under the Bail Reform Act clause which I
13   just indicated, that calls for a presumption in favor of
14   detention.
15           THE COURT:  And, Attorney Sunwabe, do you agree with
16   that position; that this would be your burden to proceed,
17   given the presumption that appears to apply?
18           MR. SUNWABE:  Well, if that's what the law says, I
19   will.  But I was under the influence [sic] that the United
20   States was supposed to proceed.  It's rather delayed that Mr.
21   Trabold is now, you know, punching the ball in my direction,
22   saying, hey, you go.
23               I was under the impression that the United
24   States was supposed to proceed to proffer or provide reasons
25   as to why my client should be in detention.  But if he's not
```

1 willing, I can rebut any statement he -- I can rebut the
2 United States' position at this point. I'd be willing to do
3 that, Your Honor.
4       THE COURT: Yes. And I believe that Attorney
5 Trabold's position is correct. This does fall under the
6 presumption provision of 3142. It's a light presumption, but
7 it would be appropriate for the defense to proffer or offer
8 evidence for release.
9       You may proceed, Attorney Sunwabe.
10       MR. SUNWABE: Your Honor, we -- let me begin by
11 saying that we are currently living in an extraordinary time
12 for two reasons. First, we have COVID-19, and we have
13 widespread demonstration across these United States of America
14 protesting what members of my client's community sees as
15 patterns and practices of injustice, as has been for a very
16 long time in this country.
17       And with respect to COVID-19, we all know the
18 danger that it poses to our individual and collective health.
19       With that being the case, Your Honor, let me
20 point out for the Court that my client is not alleged to have
21 committed any crime that falls within the category of crimes
22 listed on 3142(f).
23       Despite the position of the United States that
24 an arson is a violent crime, we take the opposite direction.
25 We do not believe that arson falls within the category of

```
 1   crimes listed under 3142 Subsection (f).
 2              This issue has actually been addressed before
 3   by the Tenth Circuit, in a different circumstance, and I will
 4   state the name of the case for this Court.  That's State
 5   versus Sala [sic], S-A-L-A-S --
 6          (Attorney Sunwabe asked for clarification by the
 7   reporter.)
 8          MR. SUNWABE:  I was saying that in spite of the
 9   United States' position, we do not believe that arson is -- is
10   a violent crime.
11              And two points are significant here.  It is
12   alleged that Mr. Barnett either torched or attempted to torch
13   the coffee shop in question.  What the United States does not
14   say in its Complaint was that the coffee shop was occupied at
15   the time that Mr. Barnett is accused of trying to torch it.
16   Okay?  So I do not want that point to be lost on this Court.
17   We're talking about a coffee shop that was not occupied by
18   anyone at the time that the alleged incident occurred.  We are
19   not conceding that my client did it, but for the purposes of
20   this argument, I'd just like to lay that out there on the
21   record.
22              The second thing is in State v. Sala [sic] --
23   and I will be willing to provide the State -- I mean, the
24   Court with the direct quotation.  In that case, the Tenth
25   Circuit made it clear that arson was not a crime of violence.
```

1  And as the Court held, it is not a crime of violence because
2  it does not require as an element the use of force against the
3  property of another.
4          Your Honor, myself and Mr. Trabold can choose
5  to torch our car. That does not mean that we've met the
6  element requirement of the violent crime. So arson is not a
7  violent crime.
8          And the other thing I will add is that United
9  States v. Sala [sic] dealt with another incident. However, a
10 legal reasoning in United States v. Sala [sic] is applicable
11 here.
12         Secondly, my client is not a flight risk. Let
13 me point out to the Court here that Mr. Barnett responded to
14 these charges by reaching out to me immediately after the
15 demonstration. It was because of my own concern for my
16 health, given that a demonstration had just taken place in
17 Erie, I requested, now, look, stay put; I will reach out to
18 State authorities, and I will turn you in. A person who wants
19 to run from the law does not reach out to the law.
20         My client is willing, he's able, he wants to
21 face these charges. He is not running from the law. He's not
22 a flight risk. He has not -- he's not alleged to have
23 committed a violent crime. He has not committed a crime with
24 respect to a man or child. He has not committed a crime with
25 respect to fraud. He has not committed any of the crimes

1  listed under 18 USC 3142(f), Your Honor.
2              The United States cannot seek to detain my
3  client on these accusations.  The request for detention here
4  appears to be political in nature, given the remarks in
5  Pittsburgh.
6              And I will point out to the Court as to why
7  these demonstrations are happening.  We are living in the
8  planet when a member of -- of my client's community has said,
9  we've had enough.  We're over the police; we're the only
10 person who fears tickets, appearing to break the law in these
11 United States of America.  And it is precisely for that reason
12 that we're seeing peaceful gathering, peaceful demonstration
13 across this country.
14             Now, we have asked my client's mother, who is
15 able and willing, to act as a third-party custodian until
16 these matters are resolved within this court.  Your Honor,
17 we're asking this Court to release Mr. Barnett to the custody
18 of his mom.  We will be more than willing for him to be
19 monitored by the Fed in whatever capacity the Fed deems
20 necessary.
21             But as of today, given the nature of COVID-19,
22 given his own underlying healthcare reasons, health reasons
23 and health concerns, it does not make -- it is not prudent to
24 keep him incarcerated.  He is from Erie.  He voluntarily
25 turned himself in.  He will answer this Court.  And we're

```
1   asking this Court to release him to the custody of his mom
2   until this matter is resolved.
3               Thank you, Your Honor.
4            THE COURT:  Thank you.  Mr. Sunwabe.  I will review
5   State v. Salas, the case you cited from the Tenth Circuit.
6               But if I were to disagree and find that the
7   charge here -- the crime alleged, in fact, does fall within
8   the presumption and is, in fact, a crime of violence, if I
9   were to so find, I understand your argument to be in proffer,
10  in response to the presumption, that -- first, that your
11  client is not a flight risk.  I see that he has significant
12  family ties here in the Erie area and would submit to a
13  custodial arrangement with his mother.  And that in terms of
14  ensuring the safety of the community, his criminal record and
15  other attributes do not make him a threat to the community.
16  And that, in any case, I could impose conditions of release
17  that would reasonably assure the safety of the community and
18  the public.
19              Do I understand your position correctly?
20           MR. SUNWABE:  Absolutely, Your Honor.
21           THE COURT:  Okay, very good.
22              Attorney Trabold, I'm going to reserve my
23  decision on the presumption issue pending a full presentation
24  of merits here.  But I would ask you to state the Government's
25  position at this time.
```

```
1              MR. TRABOLD:  Yes, Your Honor.
2                   I would offer by way of proffer a copy of the
3    Criminal Complaint and accompanying affidavit that was filed
4    in court that Your Honor signed.  I've marked that as
5    Government's Exhibit No. 1, and I had provided that previous
6    to the start of the hearing by way of email to the Court and
7    to defense counsel.  We would ask that be admitted as
8    Government's Exhibit No. 1.
9              THE COURT:  It's a matter of record, and it is
10   admitted.
11             MR. TRABOLD:  Your Honor, our position is that the
12   presumption in this case hasn't been rebutted, because all
13   that Mr. Barnett has done is proffer the -- his mother as a
14   third-party custodian.  And if proffering your mother as your
15   third-party custodian is enough to rebut the presumption in
16   favor of detention, then there really isn't any presumption in
17   favor of detention.
18                  Clearly, a Defendant should have to do more
19   than proffer his mother as his third-party custodian in order
20   to overcome the presumption.
21                  Separate and apart from the presumption issue,
22   it's our position that the consideration of the 3142(g)
23   factors counsels the Court to detain Mr. Barnett in this case.
24                  The first factor is the nature and
25   circumstances of the offense charged, and Congress has
```

1 specifically brought to the Court's attention crimes involving
2 violence should be given special attention.
3 It's our position that -- I'm not familiar with
4 the case that the counsel has brought to the Court's
5 attention, but it's our position that if you look at the
6 definitional section of the Bail Reform Act, Section 3156 of
7 the Bail Reform Act defines a crime of violence as a offense
8 that has as an element of the offense the use or attempted use
9 of physical force against the property of another or a felony
10 with a substantial risk that physical force against the
11 property of another may be used in the course of committing
12 the offense. That seems to be black letter what we have here.
13 Mr. Barnett is charged by way of Complaint with
14 attempting to essentially burn down a coffee shop and/or
15 causing fire at a coffee shop which appears, at a minimum, to
16 be the attempted use of physical force against the property of
17 another.
18 It really is of no consequence that the coffee
19 shop at the time was not occupied by anybody, both because the
20 definitional section in 3156 for crime of violence doesn't
21 require that, but, also, I wanted to bring to the Court's
22 attention that there are ten apartments above that coffee
23 shop. So, obviously, the conduct alleged at a minimum had the
24 chance of causing great physical injury to other individuals.
25 So it's our position that there has been some

Case 4:20-cr-00008-SBB Document 87-10 Filed 07/30/21 Page 11 of 18

```
 1    case law as it relates to arson as it relates to the career
 2    offender provisions, but this definition under the Bail Reform
 3    Act is different than the career offender definitional
 4    provision and that it quite clearly falls under -- arson would
 5    quite clearly fall under the definition at Section 3156.
 6                 The second factor you're asked to consider is
 7    the weight of the evidence.  And in this case, as the Criminal
 8    Complaint alleges, Mr. Barnett has been caught on multiple
 9    videos being the individual involved in the criminal activity.
10                 It's also alleged in the Criminal Complaint
11    that Mr. Barnett has distinctive tattoos on his body, which
12    you can see in the videos, and that Mr. Barnett matches the
13    height and general physical description of the individual
14    involved in the the arson at the Cove + Forge [sic] Coffee
15    Shop on May 30th of 2020.  So there's ample reason for the
16    Court to conclude that the weight of the evidence against
17    Mr. Barnett is high.
18                 The third factor that you're asked to consider
19    is the history and characteristics of the individual.
20    Mr. Barnett has been unemployed since May of 2019.  The
21    Pretrial Services report indicates that he has drug and mental
22    health issues; that he has one prior juvenile adjudication in
23    Erie County Juvenile Court for theft and criminal trespass,
24    and that he has ten prior adult involvements with the adult
25    criminal justice systems, which include false identification
```

1 to law enforcement.
2           Lastly, you're asked to consider the nature and
3 seriousness of the danger posed by Mr. Barnett's release.
4 This case involves allegations of Mr. Barnett causing or
5 attempting to cause a fire at a coffee shop during a riot in
6 downtown Erie on May 30th of 2020. The location, as I
7 mentioned, above which there are ten apartments.
8           The nature and seriousness of the danger could
9 not scarcely be greater, given the actions undertaken by
10 Mr. Barnett, which are obviously, at a minimum, extremely
11 dangerous. And also undertaken during a time of civil unrest.
12          This case does not have anything to do with
13 politics. It has everything to do with the allegations that
14 are contained in the Criminal Complaint. And it's our
15 position that when you consider in their totality the 3142(g)
16 factors in this case, you should detain Mr. Barnett because
17 this is a crime of violence for which the evidence against him
18 is very strong. Mr. Barnett's history and characteristics
19 should not give the Court confidence that he will abide by any
20 conditions upon release. And, again, the nature and
21 seriousness of the danger in this case is very high.
22          I just want to be clear with one other matter,
23 Your Honor. We are not seeking to detain Mr. Barnett based on
24 the idea that he is a flight risk. Our argument in this case
25 is that Mr. Barnett is a danger to the community based on all

1  the facts and circumstances that I just mentioned. And we
2  don't think that a proffer or the ultimately release of
3  Mr. Barnett to his mother as a third-party custodian, when his
4  mother, I don't think, has appeared in court and offered any
5  testimony in support of that proffer, is enough to overcome
6  the presumption in the first instance, and, more importantly,
7  is enough to justify his release.
8  　　　　　　Thank you.
9  　　　　　　THE COURT:  Thank you, Attorney Trabold.
10  　　　　　　Attorney Sunwabe, further proffer or argument
11  on these points?  And to Attorney Trabold's last statement, is
12  Miss Hollingsworth available to the Court today?
13  　　　　　　MR. SUNWABE:  Miss Hollingsworth is not available to
14  the Court today, Your Honor.  She has an appointment that she
15  had to go to.  But I can make her available to Your Honor
16  within an hour or two.  She is not available to the Court
17  today.
18  　　　　　　Your Honor, one point that I would like to
19  rebut is the assertion and part of the United States again
20  that my client should be held because he is a danger to
21  society.
22  　　　　　　THE COURT:  You may proceed.
23  　　　　　　(Attorney Sunwabe asked for clarification by the
24  reporter.)
25  　　　　　　MR. SUNWABE:  To Mr. Trabold's last point or

```
 1   second-to-the-last point that Mr. Barnett is a danger to this
 2   society, I'd just like to point out that that assertion is not
 3   true.
 4              We have before us the report from Pretrial
 5   Services, which does not point -- or paint a picture of a
 6   dangerous person.  What it does show is that he has had in the
 7   past some health issues, including mental health, but he -- he
 8   has not been found -- or not been established to be a fact
 9   that he is a danger to this community.  He's not.
10              He participated in a demonstration that the
11   United States alleges that during that time he torched a
12   coffee shop or attempted to torch a coffee shop.  Beyond that,
13   we really have nothing in his record that points towards a
14   dangerous act, felonious act, or anything of that nature.  He
15   is not a danger to this society.  He poses no danger to anyone
16   whatsoever.
17              THE COURT:  Yes.  I see in the Pretrial Services
18   report that Pretrial Services did perform an evaluation of
19   Miss Hollingsworth's home and found it to be an appropriate or
20   suitable third-party custodian/custodial relationship.
21              Attorney Trabold, how is it -- if I were to
22   confine Mr. Barnett at home subject to electronic monitoring,
23   as opposed to a curfew or other more limited restrictions, how
24   is it that that would not adequately safeguard the public in
25   this case?
```

```
 1            MR. TRABOLD:  Well, Judge, we just think on balance,
 2   given the 3142 factors, in light of the conduct that's alleged
 3   and in light of Mr. Barnett's drug and alcohol -- or drug and
 4   mental health issues -- excuse me -- and the fact that he has
 5   a prior false identification to law enforcement, in addition
 6   to multiple other prior involvements with the criminal justice
 7   system, both as a juvenile and as an adult, we don't think the
 8   placement of him in the community on electronic monitoring
 9   under a -- I gather a home incarceration or a home detention
10   situation is appropriate, given the 3142(g) factors.
11            THE COURT:  Yes.  I mean, if I were to release, it
12   would be subject to home detention and electronic monitoring
13   and limiting his ability to leave that home.
14                 I do not in any way diminish or understate the
15   seriousness of the charge in this particular case.  And while
16   I will look at the case law and bring a reasoned and balanced
17   analysis to this particular issue, intuitively, in applying
18   some common sense, I mean, arson or attempted arson of an
19   establishment such as a coffee shop, especially one where
20   there are apartments in the area, is, in my mind, a crime of
21   violence.  And whether we characterize it as a crime of
22   violence, it's one where the potential for not only property
23   damage is extremely high, but -- and although not part of the
24   charge here, you know, the potential for injury or death to
25   individuals is high.
```

```
 1              So I do have a very hard time accepting the
 2   characterization of this crime as anything less than very
 3   serious.
 4              But my responsibility and the charge that comes
 5   to me under the statute, assuming that the presumption applies
 6   and has been rebutted here, is to try to find conditions of
 7   release that reasonably safeguard the public.  And if I can do
 8   that by putting an electronic monitor on Mr. Barnett's ankle
 9   and confining him to his mother's home, the law requires that
10   I do so.  So I'm going to have to take a look at that.
11              I do want to look at the case cited by Attorney
12   Sunwabe, so I'm going to take this matter under advisement and
13   issue an Order before the end of the day either releasing
14   Mr. Barnett subject to very strict conditions or a further
15   order of detention, if I find that that's appropriate here.
16   But I do want to take a look at what both counsel have cited.
17   There appears to be some conflict in interpretation.  I want
18   to reconcile that appropriately.
19              In light of my comments, anything further at
20   this time, Attorney Trabold, that you'd like to offer to the
21   Court?
22         MR. TRABOLD:  No, Your Honor.
23         THE COURT:  All right.  Attorney Sunwabe, anything
24   else you'd like to tell me before we adjourn?
25         MR. SUNWABE:  Yes, Your Honor.  I would just like to
```

```
 1   go back to State v. Sala [sic].  As I mentioned to you, that
 2   case deals with another matter, but the legal analysis is the
 3   same.
 4            THE COURT:  I will review it carefully before
 5   issuing my decision.
 6              For the time being, though, we are adjourned.
 7   Thank you.
 8            MR. SUNWABE:  Thank you, Your Honor.
 9               (Hearing concluded at 1:59 p.m.)
10
11
12
13
14
15                    C E R T I F I C A T E
16       I, JANIS L. FERGUSON, RPR, CRR, certify that the
     foregoing is a correct transcript from the record of
17   proceedings in the above-entitled case.
18
19   \S\   Janis L. Ferguson          7/31/2020
     JANIS L. FERGUSON, RPR, CRR      Date of Certification
20   Official Court Reporter
21
22
23
24
25
```