# EXHIBIT AA



An official website of the United States government
Here's how you know

THE UNITED STATES
DEPARTMENT *of* JUSTICE
7.000 - PRINCIPLES OF FEDERAL PROSECUTION

9-27.001        Preface

9-27.110        Purpose

9-27.120        Application

9-27.130        Implementation

9-27.140        Modifications or Departures

9-27.150        Non-Litigability

9-27.200        Initiating and Declining Prosecution—Probable Cause Requirement

9-27.220        Grounds for Commencing or Declining Prosecution

9-27.230        Initiating and Declining Charges□—Substantial Federal Interest

9-27.240        Initiating and Declining Charges—Prosecution in Another Jurisdiction

9-27.250        Non-Criminal Alternatives to Prosecution

9-27.260        Initiating and Declining Charges—□Impermissible Considerations

9-27.270        Records of  Declined Prosecutions

9-27.300        Selecting Charges—Charging Most Serious Offenses

9-27.310        Charges Triggering Mandatory Minimum Sentences and Recidivist Enhancements in Certain Violent Crime Cases Including Drug Trafficking Crimes

9-27.320        Additional Charges

9-27.330        Pre-Charge Plea Agreements

9-27.400        Plea Agreements Generally

9-27.410        Plea Agreements - Cooperation

9-27.420        Plea Agreements□—Considerations to be Weighed

9-27.430        Selecting Plea Agreement Charges

9-27.440        Plea Agreements When Defendant Denies Guilt

9-27.450        Records of Plea Agreements

9-27.500        Offers to Plead Nolo Contendere□—Opposition Except in Unusual Circumstances

9-27.520        Offers to Plead Nolo Contendere—□Offer of Proof

9-27.530        Argument in Opposition of Nolo Contendere Plea

9-27.600        Entering into Non-prosecution Agreements in Return for Cooperation□—Generally

9-27.620      Entering into Non-prosecution Agreements in Return for Cooperation☐—Considerations to be Weighed

9-27.630      Entering into Non-prosecution Agreements in Return for Cooperation—☐Limiting the Scope of Commitment

9-27.640      Agreements Requiring Assistant Attorney General Approval

9-27.641      Multi-District (Global) Agreement Requests

9-27.650      Records of Non-Prosecution Agreements

9-27.710      Participation in Sentencing☐—Generally

9-27.720      Establishing Factual Basis for Sentence

9-27.730      Making Sentencing Recommendations

9-27.745      Unreasonable or Illegal Sentences

9-27.750      Disclosing Factual Material to Defense

9-27.760      Limitation on Identifying Uncharged Third-Parties Publicly

9-27.001 - PREFACE

These principles of federal prosecution provide  federal prosecutors a statement of  prosecutorial policies and practices. As such, they should promote the reasoned exercise of prosecutorial authority and contribute to the fair, evenhanded administration of the federal criminal laws.

A determination to prosecute represents a policy judgment that the fundamental interests of society require the application of federal criminal law to a particular set of circumstances—recognizing both that serious violations of federal law must be prosecuted, and that prosecution entails profound consequences for the accused, crime victims, and their families  whether or not a conviction ultimately results. Other prosecutorial decisions can be equally significant. Decisions, for example, regarding the specific charges to be brought, or concerning plea dispositions, effectively determine the range of sanctions that may be imposed for criminal conduct. The rare decision to consent to pleas of nolo contendere may affect the success of related civil suits for recovery of damages. And the government's position during the sentencing process will help ensure that the court imposes a sentence consistent with 18 U.S.C. § 3553(a).

These principles of federal prosecution have been designed to assist in structuring the decision-making process of attorneys for the government. For the most part, they have been cast in general terms with a view to providing guidance rather than to mandating results. The intent is to assure regularity without regimentation, and to prevent unwarranted disparity without sacrificing necessary flexibility.

The availability of this statement of principles to federal law enforcement officials and to the public serves two important purposes: ensuring the fair and effective exercise of prosecutorial discretion and responsibility by attorneys for the government, and promoting confidence on the part of the public and individual defendants that important prosecutorial decisions will be made rationally and objectively on the merits of each case. The principles provide convenient reference points for the process of making prosecutorial decisions; they facilitate the task of training new attorneys in the proper discharge of their duties; they contribute to more effective management of the government's limited prosecutorial resources by promoting greater consistency among the prosecutorial activities of all United States Attorney's offices and between their activities and the Department's law enforcement priorities; they make possible better coordination of investigative and prosecutorial activity by enhancing the understanding of investigating departments and agencies of the considerations underlying prosecutorial decisions by the Department; and they inform the public of the careful process by which prosecutorial decisions are made.

Important though these principles are to the proper operation of our federal prosecutorial system, the success of that system must rely ultimately on the character, integrity, sensitivity, and competence of those men and women who are selected to represent the public interest in the federal criminal justice process. It is with their help that these principles have been prepared, and it is with their efforts that the purposes of these principles will be achieved.

[updated February 2018]

### 9-27.110 - PURPOSE

The principles of federal prosecution set forth herein are intended to promote the reasoned exercise of prosecutorial discretion by attorneys for the government with respect to:

1. Initiating and declining prosecution;
2. Selecting charges;
3. Entering into plea agreements;
4. Opposing offers to plead nolo contendere;
5. Entering into non-prosecution agreements in return for cooperation; and
6. Participating in sentencing.

**Comment.** Under the federal criminal justice system, the prosecutor has wide latitude in determining when, whom, how, and even whether to prosecute for apparent violations of federal criminal law. The prosecutor's broad discretion in such areas as initiating or foregoing prosecutions, selecting or recommending specific charges, and terminating prosecutions by accepting guilty pleas has been recognized on numerous occasions by the courts. *See, e.g.*, *United States v. LaBonte,* 520 U.S. 751, 762 (1997)*; Oyler v. Boles*, 368 U.S. 448 (1962); *United States v. Fokker Services B.V.,* 818 F.3d 733, 741 (D.C. Cir. 2016); *Newman v. United States*, 382 F.2d 479 (D.C. Cir. 1967); *Powell v. Ratzenbach*, 359 F.2d 234 (D.C. Cir. 1965). This discretion exists by virtue of the prosecutor's status as a member of the Executive Branch, and the President's responsibility under the Constitution to ensure that the laws of the United States be "faithfully executed." U.S. Const. Art. II § 3. *See Nader v. Saxbe*, 497 F.2d 676, 679 n. 18 (D.C. Cir. 1974).

Since federal prosecutors have great latitude in making crucial decisions concerning enforcement of a nationwide system of criminal justice, it is desirable, in the interest of the fair and effective administration of justice, that all federal prosecutors be guided by a general statement of principles that summarizes appropriate considerations to be weighed, and desirable practices to be followed, in discharging their prosecutorial responsibilities.

Although these principles deal with the specific situations indicated, they should be read in the broader context of the basic responsibilities of federal attorneys: making certain that the general purposes of the criminal law—assurance of warranted punishment, deterrence of further criminal conduct, protection of the public from offenders, and rehabilitation of offenders—are adequately met, while making certain also that the rights of individuals are scrupulously protected.

[cited in JM 9-2.031]

[updated February 2018]

### 9-27.120 - APPLICATION

In carrying out criminal law enforcement responsibilities, each Department of Justice attorney should be guided by these principles, and each United States Attorney and each Assistant Attorney General should ensure that such principles are communicated to the attorneys who exercise prosecutorial responsibility within his/her office or under his/her direction or supervision.

**Comment**. It is expected that each federal prosecutor will be guided by these principles in carrying out his/her criminal law enforcement responsibilities unless a modification of, or departure from, these principles has been authorized pursuant to JM 9-27.140.  However, it is not intended that reference to these principles will require a particular prosecutorial decision in any given case. Rather, these principles are set forth solely for the purpose of assisting attorneys for the government in determining how best to exercise their authority in the performance of their duties.

[updated February 2018]

### 9-27.130 - IMPLEMENTATION

Each United States Attorney and responsible Assistant Attorney General should establish internal office procedures to ensure:

1. That prosecutorial decisions are made at an appropriate level of responsibility, and are made consistent with these principles; and
2. That serious, unjustified departures from the principles set forth herein are followed by such remedial action, including the imposition of disciplinary sanctions or other measures, when warranted, as are deemed appropriate.

**Comment.**  One purpose of such procedures should be to ensure consistency in the decisions within each office by regularizing the decision -making process so that decisions are made at the appropriate level of responsibility.  A second purpose, equally important, is to provide appropriate remedies for serious, unjustified departures from sound prosecutorial principles.  The United States Attorney or Assistant Attorney General may also wish to establish internal procedures for appropriate review and documentation of decisions.

[updated February 2018]

### 9-27.140 - MODIFICATIONS OR DEPARTURES

United States Attorneys may modify or depart from the principles set forth herein as necessary in the interests of fair and effective law enforcement within the district. Any  modification or departure contemplated as a matter of policy or regular practice must be approved by the appropriate Assistant Attorney General and the Deputy Attorney General. Similarly, Assistant Attorneys General overseeing prosecuting components may modify or depart from the principles set forth herein in the interests of fair and effective law enforcement, and any modification or departure contemplated by an Assistant Attorney General as a matter of policy or regular practice must be approved by the Deputy Attorney General.

**Comment.** Although these materials are designed to promote consistency in the application of federal criminal laws, they are not intended to produce rigid uniformity among federal prosecutors in all areas of the country at the expense of the fair administration of justice. Different offices face different conditions and have different requirements. In recognition of these realities, and in order to maintain the flexibility necessary to respond fairly and effectively to local conditions, each United States Attorney and Assistant Attorney General overseeing prosecuting components is authorized to modify or depart from these principles, as necessary in the interests of fair and effective law enforcement within the district. In situations in which a significant modification or departure is contemplated as a matter of policy or regular practice, the appropriate Assistant Attorney General and the Deputy Attorney General must approve the action before it is adopted.

[cited in JM 9-27.120]

[updated February 2018]

### 9-27.150 - NON-LITIGABILITY

These principles, and internal office procedures adopted pursuant to them, are intended solely for the guidance of attorneys for the government. They are not intended to create a substantive or procedural right or benefit, enforceable at law , and may not be relied upon by a party to litigation with the United States.

**Comment.** The Principles of Federal Prosecution have been developed purely as matter of internal Departmental policy and are being provided to federal prosecutors solely for their own guidance in performing their duties. Neither this statement of principles nor any internal procedures adopted by individual offices create any rights or benefits. By setting forth this fact explicitly, JM 9-27.150 is intended to foreclose efforts to litigate the validity of prosecutorial actions alleged to be at variance with these principles or not in compliance with internal office procedures. In the event that an attempt is made to litigate any aspect of these principles, to litigate any internal office procedures, or to litigate the applicability

of such principles or procedures to a particular case, the attorney for the government should oppose the attempt. The attorney for the government should also notify the Department of the litigation if there is a reasonable possibility the government may face an adverse decision on the litigation or if a court renders an adverse decision.

[updated  February 2018]

### 9-27.200 - INITIATING AND DECLINING PROSECUTION—PROBABLE CAUSE REQUIREMENT

If the attorney for the government concludes that there is probable cause to believe that a person has committed a federal offense within his/her jurisdiction, he/she should consider whether to:

1. Request or conduct further investigation;
2. Commence or recommend prosecution;
3. Decline prosecution and refer the matter for prosecutorial consideration in another jurisdiction;
4. Decline prosecution and commence or recommend pretrial diversion or other non-criminal disposition; or
5. Decline prosecution without taking other action.

**Comment.** JM 9-27.200 sets forth the courses of action available to the attorney for the government once he/she concludes that there is probable cause to believe that a person has committed a federal offense within his/her jurisdiction. The probable cause standard is the same standard required for the issuance of an arrest warrant or a summons upon a complaint (*see* Fed. R. Crim. P. 4(a)), and for a magistrate's decision to hold a defendant to answer in the district court (s*ee* Fed. R. Crim. P. 5.1(a)), and is the minimal requirement for indictment by a grand jury. *See Branzburg v. Hayes*, 408 U.S. 665, 686 (1972). This is, of course, a threshold consideration only. Merely because this requirement can be met in a given case does not automatically warrant prosecution; further investigation may instead be warranted, and the prosecutor should still take into account all relevant considerations, including those described in the following provisions, in deciding upon his/her course of action. On the other hand, failure to meet the minimal requirement of probable cause is an absolute bar to initiating a federal prosecution, and in some circumstances may preclude reference to other prosecuting authorities or recourse to non-criminal sanctions or other measures as well.

[cited in JM 9-10.060; JM 9-2.031]

[updated February 2018]

### 9-27.220 - GROUNDS FOR COMMENCING OR DECLINING PROSECUTION

The attorney for the government should commence or recommend federal prosecution if he/she believes that the person's conduct constitutes a federal offense, and that the admissible evidence will probably be sufficient to obtain and sustain a conviction, unless (1) the prosecution would serve no substantial federal interest; (2) the person is subject to effective prosecution in another jurisdiction; or (3) there exists an adequate non-criminal alternative to prosecution.

**Comment.**  Evidence sufficient to sustain a conviction is required under Rule 29(a) of the Federal Rules of Criminal Procedure, to avoid a judgment of acquittal. Moreover, both as a matter of fundamental fairness and in the interest of the efficient administration of justice, no prosecution should be initiated against any person unless the attorney for the government believes that the admissible evidence is sufficient to obtain and sustain a guilty verdict by an unbiased trier of fact. In this connection, it should be noted that, when deciding whether to prosecute, the government attorney need not have in hand, at that time, all of the evidence upon which he/she intends to rely at trial, if he/she has a reasonable and good faith belief that such evidence will be available and admissible at the time of trial. Thus, for example, it would be proper to commence or recommend a prosecution even though a key witness may be out of the country, so long as there is a good faith basis to believe that the witness's presence at trial could reasonably be expected.

Where the law and the facts create a sound, prosecutable case, the the likelihood of an acquittal due to unpopularity of some aspect of the prosecution or because of the overwhelming popularity of the defendant or his/her cause is not a factor prohibiting prosecution.  For example, in a civil rights case or a case involving an extremely popular political figure, it might be clear that the evidence of guilt—viewed objectively by an unbiased factfinder—would be sufficient to

obtain and sustain a conviction, yet the prosecutor might reasonably doubt, based on the circumstances, that the jury would convict. In such a case, despite his/her negative assessment of the likelihood of a guilty verdict (based on factors extraneous to an objective view of the law and the facts), the prosecutor may properly conclude that it is necessary and appropriate to commence or recommend prosecution and allow the criminal process to operate in accordance with the principles set forth here.

However, the attorney for the government's belief that a person's conduct constitutes a federal offense and that the admissible evidence will probably be sufficient to obtain and sustain a conviction is not sufficient standing by itself to commence or recommend prosecution. The prosecution must also serve a substantial federal interest, and the prosecutor must assess whether, in his/her judgment, the person is subject to effective prosecution in another jurisdiction; and whether there exists an adequate non-criminal alternative to prosecution. It is left to the judgment of the attorney for the government to determine whether these circumstances exist. In exercising that judgment, the attorney for the government should consult JM 9-27.230, 9-27.240, 9-27.250, and 9-27.260.

[cited in JM 6-4.210; JM 9-10.060; JM 9-27.200; JM 9-28.300]

[updated February 2018]

### 9-27.230 - INITIATING AND DECLINING CHARGES—SUBSTANTIAL FEDERAL INTEREST

In determining whether a prosecution would serve a substantial federal interest, the attorney for the government should weigh all relevant considerations, including:

1. Federal law enforcement priorities, including any federal law enforcement initiatives or operations aimed at accomplishing those priorities;
2. The nature and seriousness of the offense;
3. The deterrent effect of prosecution;
4. The person's culpability in connection with the offense;
5. The person's history with respect to criminal activity;
6. The person's willingness to cooperate in the investigation or prosecution of others;
7. The person's personal circumstances;
8. The interests of any victims; and
9. The probable sentence or other consequences if the person is convicted.

**Comment.** The list of relevant considerations is not intended to be all-inclusive. Moreover, not all of the factors will be applicable to every case, and in any particular case one factor may deserve more weight than it might in another case.

1. **Federal Law Enforcement Priorities.** Federal law enforcement resources are not sufficient to permit prosecution of every alleged offense over which federal jurisdiction exists. Accordingly, in the interest of allocating its limited resources so as to achieve an effective nationwide law enforcement program, from time to time the Attorney General may establish national investigative and prosecutorial priorities. These priorities are designed to focus federal law enforcement efforts on those matters within the federal jurisdiction that are most deserving of federal attention and are most likely to be handled effectively at the federal level, rather than state or local level. As just one example, prosecution of offenses within the exclusive territorial jurisdiction of the United States, where no other avenue of prosecution exists, serves a particular and important federal interest. In addition, individual United States Attorneys are required to establish their own priorities (in consultation with law enforcement authorities), within the national priorities, in order to concentrate their resources on problems of particular local or regional significance. The Attorney General and individual United States Attorneys may implement specific federal law enforcement initiatives and operations designed at accomplishing those priorities. In weighing the federal interest in a particular prosecution, the attorney for the government should give careful consideration to the extent to which prosecution would accord with these national and local priorities, as well as federal law enforcement initiatives or operations designed to accomplish them, whether on a national level or by important impact on local law enforcement needs. The fact that a particular prosecution is part of a larger federal law enforcement initiative that serves a substantial federal interest is an appropriate and relevant consideration in determining whether that individual prosecution also serves such a federal interest.

2. **Nature and Seriousness of Offense.**  It is important that limited federal resources not be wasted in prosecuting inconsequential cases or cases in which the violation is only technical. Thus, in determining whether a substantial federal interest exists that requires prosecution, the attorney for the government should consider the nature and seriousness of the offense involved. A number of factors may be relevant to this consideration. One factor that is obviously of primary importance is the actual or potential impact of the offense on the community and on the victim(s). The nature and seriousness of the offense may also include a consideration of national security interests.

The impact of an offense on the community in which it is committed can be measured in several ways: in terms of economic harm done to community interests; in terms of physical danger to the citizens or damage to public property; and in terms of erosion of the inhabitants' peace of mind and sense of security. In assessing the seriousness of the offense in these terms, the prosecutor may properly weigh such questions as whether the violation is technical or relatively inconsequential in nature and what the public attitude may be toward prosecution under the circumstances of the case. The public may be indifferent, or even opposed, to enforcement of the controlling statute whether on substantive grounds, or because of a history of non-enforcement, or because the offense involves essentially a minor matter of private concern and the victim is not interested in having it pursued. On the other hand, the nature and circumstances of the offense, the identity of the offender or the victim, or the attendant publicity, may be such as to create strong public sentiment in favor of prosecution. While public interest, or lack thereof, deserves the prosecutor's careful attention, it should not be used to justify a decision to prosecute, or to take other action, that is not supported on other grounds. Public and professional responsibility sometimes will require the choosing of a particularly unpopular course.

3. **Deterrent Effect of Prosecution.** Deterrence of criminal conduct, whether it be criminal activity generally or a specific type of criminal conduct, is one of the primary goals of the criminal law. This purpose should be kept in mind, particularly when deciding whether a prosecution is warranted for an offense that appears to be relatively minor; some offenses, although seemingly not of great importance by themselves, if commonly committed would have a substantial cumulative impact on the community.

4. **The Person's Culpability.** Although a prosecutor may have sufficient evidence of guilt, it is nevertheless appropriate for him/her to give consideration to the degree of the person's culpability in connection with the offense, both in the abstract and in comparison with any others involved in the offense. If, for example, the person was a relatively minor participant in a criminal enterprise conducted by others, or his/her motive was non-criminal, and no other factors require prosecution, the prosecutor might reasonably conclude that some course other than prosecution would be appropriate.

5. **The Person's Criminal History.** If a person is known to have a prior conviction or is reasonably believed to have engaged in criminal activity at an earlier time, this should be considered in determining whether to commence or recommend federal prosecution. In this connection, particular attention should be given to the nature of the person's prior criminal involvement, when it occurred, its relationship, if any, to the present offense, and whether he/she previously avoided prosecution as a result of an agreement not to prosecute in return for cooperation or as a result of an order compelling his/her testimony. By the same token, a person's lack of prior criminal involvement or his/her previous cooperation with the law enforcement officials should be given due consideration in appropriate cases.

6. **The Person's Willingness to Cooperate.** A person's willingness to cooperate in the investigation or prosecution of others is another appropriate consideration in the determination whether a federal prosecution should be undertaken. Generally speaking, a willingness to cooperate should not by itself relieve a person of criminal liability. There may be some cases, however, in which the value of a person's cooperation clearly outweighs the federal interest in prosecuting him/her. These matters are discussed more fully below, in connection with plea agreements and non-prosecution agreements in return for cooperation.

7. **The Person's Personal Circumstances.** In some cases, the personal circumstances of an accused may be relevant in determining whether to prosecute or to take other action. Some circumstances particular to the accused, such as extreme youth, advanced age, or mental or physical impairment, may suggest that prosecution is not the most appropriate response to his/her offense; other circumstances, such as the fact that the accused occupied a position of trust or responsibility which he/she violated in committing the offense, might weigh in favor of prosecution.

8. **The Interests of Any Victims.** It is important to consider the economic, physical, and psychological impact of the offense, and subsequent prosecution, on any victims. It is appropriate for the prosecutor to take into account

such matters as the seriousness of the harm inflicted and the victim's desire for prosecution. Prosecutors may solicit the victim's views on the filing of charges through a general conversation without reference to any particular defendant or charges. For more information regarding the Department's obligations to victims, see the Crime Victims' Rights Act, 18 U.S.C. § 3771, the Victims' Rights and Restitution Act, 34 U.S.C. § 20141, and the Attorney General Guidelines for Victim and Witness Assistance.  When considering whether to initiate a prosecution or pursue an alternative resolution, such as a deferred or non-prosecution agreement, prosecutors should be aware of the possible effect the decision may have on the Department's ability to compensate victims of the underlying crimes and on the Crime Victims Fund (CVF). The CVF is a statutorily created fund that is financed by fines and penalties paid by convicted federal offenders. *See* 34 U.S.C. § 20101. Money from the CVF is used to support federal, tribal, state, and local crime victim assistance programs and to help compensate crime victims across the country. Pursuant to statute, almost all criminal fines collected following conviction are deposited into the CVF, along with all Special Assessments. *See* 34 U.S.C. § 20101(b)(1). In contrast, fines collected pursuant to a deferred prosecution or non-prosecution agreement are not deposited into the CVF but rather are sent to the General Fund of the Treasury.  See 31 U.S.C. 3302(b).

9. **The Probable Sentence or Other Consequence**. In assessing the strength of the federal interest in prosecution, the attorney for the government should consider the sentence, or other consequence, that is likely to be imposed if prosecution is successful, and whether such a sentence or other consequence would justify the time and effort of prosecution. If the offender is already subject to a substantial sentence, or is already incarcerated, as a result of a conviction for another offense, the prosecutor should weigh the likelihood that another conviction will result in a meaningful addition to his/her sentence, might otherwise have a deterrent effect, or is necessary to ensure that the offender's record accurately reflects the extent of his/her criminal conduct. For example, it might be desirable to commence a bail-jumping prosecution against a person who already has been convicted of another offense so that law enforcement personnel and judicial officers who encounter him/her in the future will be aware of the risk of releasing him/her on bail. On the other hand, if the person is on probation or parole as a result of an earlier conviction, the prosecutor should consider whether the public interest might better be served by instituting a proceeding for violation of probation or revocation of parole, than by commencing a new prosecution. The prosecutor should also be alert to the desirability of instituting prosecution to prevent the running of the statute of limitations and to preserve the availability of a basis for an adequate sentence if there appears to be a chance that an offender's prior conviction may be reversed on appeal or collateral attack. Finally, if a person previously has been prosecuted in another jurisdiction for the same offense or a closely related offense, the attorney for the government should consult existing departmental policy statements on the subject of "successive prosecution" or "dual prosecution," depending on whether the earlier prosecution was federal or nonfederal. See JM 9-2.031 (Petite Policy).

There are also considerations that deserve no weight and should not influence the decision, such as the time and resources already expended in federal investigation of the case. No amount of investigative effort warrants commencing a federal prosecution that is not fully justified on other grounds.

[cited in JM 9-2.031; JM 9-27.220; JM 9-27.250; JM 9-27.620]

[updated July 2020]

9-27.240 - INITIATING AND DECLINING CHARGES—PROSECUTION IN ANOTHER JURISDICTION

In determining whether prosecution should be declined because the person is subject to effective prosecution in another jurisdiction, the attorney for the government should weigh all relevant considerations, including::

1. The strength of the other jurisdiction's interest in prosecution;
2. The other jurisdiction's ability and willingness to prosecute effectively; and
3. The probable sentence or other consequences if the person is convicted in the other jurisdiction.

**Comment.** In many instances, it may be possible to prosecute criminal conduct in more than one jurisdiction. Although there may be instances in which a federal prosecutor may wish to consider deferring to prosecution in another federal district, or to another government, in most instances the choice will probably be between federal prosecution and

prosecution by state or local authorities. The factors listed in JM 9-27.240 are illustrative only, and the attorney for the government should also consider any others that appear relevant to his/her particular case.

1. **The Strength of the Jurisdiction's Interest.** The attorney for the government should consider the relative international, federal, state, and tribal interests with regard to the alleged criminal conduct. Some offenses, even though in violation of federal law, are of particularly strong interest to the authorities of the jurisdiction in which they occur (e.g., local, state, or foreign), either because of the nature of the offense, the identity of the offender or victim, the fact that the investigation was conducted primarily by foreign, state, or local investigators, or some other circumstance. Whatever the reason, when it appears that the federal interest in prosecution is less substantial than the interest of local, state, or foreign authorities, consideration should be given to referring the case to those authorities rather than commencing or recommending a federal prosecution.

2. **Ability and Willingness to Prosecute Effectively.**In assessing the likelihood of effective prosecution in another jurisdiction, the attorney for the government should also consider the intent of the authorities in that jurisdiction and whether that jurisdiction has the prosecutorial and judicial resources that are necessary to undertake prosecution promptly and effectively. Other relevant factors might be legal or evidentiary problems that might attend prosecution in the other jurisdiction. In addition, the federal prosecutor should be alert to any local conditions, attitudes, relationships, or other circumstances that might cast doubt on the likelihood of the other authorities conducting a thorough and successful prosecution.

3. **Probable Sentence Upon Conviction.** The ultimate measure of the potential for effective prosecution in another jurisdiction is the sentence, or other consequence, that is likely to be imposed if the person is convicted. In considering this factor, the attorney for the government should bear in mind not only the statutory penalties in the jurisdiction and sentencing patterns in similar cases, but also, the particular characteristics of the offense or of the offender that might be relevant to sentencing. He/she should also be alert to the possibility that a conviction under another jurisdiction's laws may, in some cases, result in collateral consequences for the defendant, such as disbarment, that might not follow upon a conviction under federal law.

[cited in JM 5-11.113; JM 9-27.220; JM 9-28.1100]

[updated February 2018]

9-27.250 - NON-CRIMINAL ALTERNATIVES TO PROSECUTION

In determining whether there exists an adequate, non-criminal alternative to prosecution, the attorney for the government should consider all relevant factors, including:

1. The sanctions or other measures available under the alternative means of disposition;
2. The likelihood that an effective sanction will be imposed;
3. The effect of non-criminal disposition on federal law enforcement interests; and
4. The interests of any victims.

**Comment.** When a person has committed a federal offense, it is important that the law respond promptly, fairly, and effectively. This does not mean, however, that a criminal prosecution must be commenced. In recognition of the fact that resort to the criminal process is not necessarily the only appropriate response to serious forms of antisocial activity, Congress and state legislatures have provided civil and administrative remedies for many types of conduct that may also be subject to criminal sanction. Examples of such non-criminal approaches include civil tax proceedings; civil actions under the False Claims Act or other statutory causes of action for false or fraudulent claims; civil actions under the securities, customs, antitrust, or other regulatory laws; administrative suspension and debarment or exclusion proceedings; civil judicial and administrative forfeiture; and reference of complaints to licensing authorities or to professional organizations such as bar associations. Another potentially useful alternative to prosecution in some cases is pretrial diversion. See JM 9-22.000.

Attorneys for the government should familiarize themselves with these alternatives and should consider pursuing them

if they are available in a particular case. Although on some occasions they should be pursued in addition to criminal prosecution, on other occasions these alternatives can be expected to provide an effective substitute for criminal prosecution. In weighing the adequacy of such an alternative in a particular case, the prosecutor should consider the nature and severity of the sanctions or other measures that could be imposed, the likelihood that an adequate sanction would in fact be imposed, and the effect of such a non-criminal disposition on federal law enforcement interests. When considering whether to pursue a non-criminal disposition, prosecutors should consider the interests of any victims and be aware that any fines collected under such agreement will *not* be deposited into the Crime Victims Fund, but will rather go to the General Treasury. See Comment to JM 9-27.230. In evaluating victim interests and determining whether to pursue a non-criminal disposition, the prosecutor should be available to confer with the victim in furtherance of the Crime Victims' Rights Act (CVRA) and in accordance with the Attorney General Guidelines for Victim and Witness Assistance. For more information regarding the Department's obligations to victims, see the Crime Victims' Rights Act, 18 U.S.C. § 3771, the Victims' Rights and Restitution Act, 34 U.S.C. § 20141, and the Attorney General Guidelines for Victim and Witness Assistance.

It should be noted that referrals for non-criminal disposition may not include the transfer of grand jury material unless an order under Rule 6(e) of the Federal Rules of Criminal Procedure, is obtained. See United States v. Sells Engineering, Inc., 463 U.S. 418 (1983).

[cited in JM 9-27.220; JM 9-28.1100]

[updated July 2020]

## 9-27.260 - INITIATING AND DECLINING CHARGES—IMPERMISSIBLE CONSIDERATIONS

In determining whether to commence or recommend prosecution or take other action against a person, the attorney for the government should not be influenced by:

1. The person's race, religion, gender, ethnicity, national origin, sexual orientation, or political association, activities, or beliefs;
2. The attorney's own personal feelings concerning the person, the person's associates, or the victim; or
3. The possible effect of the decision on the attorney's own professional or personal circumstances.

**Comment.** JM 9-27.260 sets forth various matters that plainly should not influence the determination whether to commence or recommend prosecution or to take other action. They are listed here not because it is anticipated that any attorney for the government might allow them to affect his/her judgment, but in order to make clear that federal prosecutors will not be influenced by such improper considerations. Of course, in a case in which a particular characteristic listed in subparagraph (1) is pertinent to the offense (for example, in an immigration case the fact that the offender is not a United States national, in a terrorism case the fact that the individual is part of a terrorist organization that uses violence in part for political ends, or in a civil rights case the fact that the victim and the offender are of different races), the provision would not prohibit the prosecutor from considering such a characteristic for the purpose intended by the Congress.

[cited in JM 8-3.300]

[updated February 2018]

## 9-27.270 - RECORDS OF PROSECUTIONS DECLINED

Whenever an attorney for the government declines to commence or recommend federal prosecution, he/she should ensure that his/her decision and the reasons therefore are communicated to the investigating agency involved and to any other interested agency, and are also reflected in the office files to ensure an adequate record of disposition of matters that are brought to the attention of the government attorney for possible criminal prosecution, but that do not result in federal prosecution. When prosecution is declined in serious cases on the understanding that action will be taken by other authorities, appropriate steps should be taken to ensure that the matter receives their attention.

[updated February 2018]

9-27.300 - SELECTING CHARGES—CHARGING MOST SERIOUS OFFENSES

Once the decision to prosecute has been made, the attorney for the government should charge and pursue the most serious, readily provable offenses. By definition, the most serious offenses are those that carry the most substantial guidelines sentence, including mandatory minimum sentences.

However, there will be circumstances in which good judgment would lead a prosecutor to conclude that a strict application of the above charging policy is not warranted. In that case, prosecutors should carefully consider whether an exception may be justified. Consistent with longstanding Department of Justice policy, any decision to vary from the policy must be approved by a United States Attorney or Assistant Attorney General, or a supervisor designated by the United States Attorney or Assistant Attorney General, and the reasons must be documented in the file.

To ensure consistency and accountability, charging and plea agreement decisions must be reviewed by a supervisory attorney. All but the most routine indictments should be accompanied by a prosecution memorandum that identifies the charging options supported by the evidence and the law and explains the charging decision therein. Each United States Attorney's Office and litigating division of the Department is required to promulgate written guidance describing its internal indictment review process.

**Comment.** Once it has been determined to commence prosecution, either by filing a complaint or an information, or by seeking an indictment from the grand jury, the attorney for the government must determine what charges to file or recommend. When the conduct in question consists of a single criminal act, or when there is only one applicable statute, this is not a difficult task. Typically, however, a defendant will have committed more than one criminal act and his/her conduct may be prosecuted under more than one statute. Moreover, the selection of charges may be complicated further by the fact that different statutes have different proof requirements and provide substantially different penalties. In such cases, considerable care is required to ensure selection of the proper charge or charges. In addition to reviewing the concerns that prompted the decision to prosecute in the first instance, particular attention should be given to the need to ensure that the prosecution will be both fair and effective.

At the outset, the attorney for the government should bear in mind that he/she will have to introduce at trial admissible evidence sufficient to obtain and sustain a conviction, or else the government will suffer a dismissal, or a reversal on appeal. For this reason, he/she should not include in an information, or recommend in an indictment, charges that he/she cannot reasonably expect to prove beyond a reasonable doubt by legally sufficient and admissible evidence at trial.

In connection with the evidentiary basis for the charges selected, the prosecutor should also be particularly mindful of the different requirements of proof under different statutes covering similar conduct. For example, the bribe provisions of 18 U.S.C. § 201 require proof of "corrupt intent," while the '"gratuity" provisions do not. Similarly, the "two witness" rule applies to perjury prosecutions under 18 U.S.C. § 1621 but not under 18 U.S.C. § 1623.

As stated, a Federal prosecutor should initially charge the most serious, readily provable offense or offenses consistent with the defendant's conduct. Charges should not be filed simply to exert leverage to induce a plea, nor should charges be abandoned in an effort to arrive at a bargain that fails to reflect the seriousness of the defendant's conduct. JM 9-27.300.

JM 9-27.300 also expresses the principle that a defendant generally should be charged with the most serious offenses that are encompassed by his/her conduct, and that are readily provable.  As noted above, this ordinarily will be the offenses that carry the most substantial guidelines sentence, including mandatory minimum sentences. Where two crimes have the same statutory maximum and the same guideline range, but only one contains a mandatory minimum penalty, the one with the mandatory minimum is the more serious. Similarly, in cases involving a theft or fraud offense that also involve an aggravated identity theft charge, 18 U.S.C. § 1028A, prosecutors should ordinarily charge the predicate offense (which likely would carry the highest guidelines sentence) and the identity theft offense (which carries a mandatory minimum). This principle provides the framework for ensuring equal justice in the prosecution of federal criminal offenders. It guarantees that every defendant will start from the same position, charged with the most serious

criminal act he/she commits. Of course, he/she may also be charged with other criminal acts (as provided in JM 9-27.320), if the proof and the government's legitimate law enforcement objectives warrant additional charges.

[cited in JM 9-27.400; JM 9-28.1200; JM 9-100.020]

[updated February 2018]

### 9-27.310 - CHARGES TRIGGERING MANDATORY MINIMUM SENTENCES AND RECIDIVIST ENHANCEMENTS IN CERTAIN VIOLENT CRIME CASES INCLUDING DRUG TRAFFICKING CRIMES

Current drug laws provide for increased maximum, and in some cases minimum, penalties for many offenses based on a defendant's prior criminal convictions. *See, e.g.*, 21 U.S.C. §§ 841 (b)(1)(A), (B), and (C), 848(a), 960 (b)(1), (2), and (3), and 962. However, a court may not impose such an increased penalty unless the United States Attorney, has filed an information with the court, before trial or before entry of a plea of guilty, setting forth the previous convictions to be relied upon. *See* 21 U.S.C. § 851.

The filing of an information under 21 U.S.C. § 851 concerning prior convictions is a penalty enhancement, not an offense, and should be pursued when, exercising sound prosecutorial discretion and under the totality of the circumstances, it is deemed appropriate.  Factors that should be considered include the seriousness of the current offense, the nature and age of the prior conviction(s), whether the defendant is cooperating and has accepted responsibility for his criminal conduct and all other mitigating and aggravating factors.

When a defendant commits one or more "crimes of violence or drug trafficking crimes" with a firearm, ordinarily charge at least one 18 U.S.C. § 924(c) count along with the underlying predicate.  In many cases, depending on the seriousness of the criminal activity and criminal history of the offender, it will be appropriate to charge and pursue multiple 924(c) offenses.

[added February 2018]

### 9-27.320 - ADDITIONAL CHARGES

Except as hereafter provided, the attorney for the government should also charge, or recommend that the grand jury charge, other offenses only when, in his/her judgment, such additional charges:

1. Are necessary to ensure that the information or indictment adequately reflects the nature and extent of the criminal conduct involved, and provides the basis for an appropriate sentence under all of the facts and circumstances of the case;
2. Provide the basis for an appropriate sentence under all of the facts and circumstances of the case; or

3. Will significantly enhance the strength of the government's case against the defendant or a codefendant.

**Comment.** It is important to the fair and efficient administration of justice in the federal system that the government bring as few charges as are necessary to ensure that justice is done.  JM 9-27.320 outlines three general situations in which additional charges may be brought: (1) when necessary adequately to reflect the nature and full extent of the criminal conduct involved; (2) when necessary to provide the basis for an appropriate sentence under all the circumstances of the case; or (3) when an additional charge or charges would significantly strengthen the case against the defendant or a codefendant.

1. **Nature and Full Extent of Criminal Conduct.** The prosecutor's initial concern should be to recommend charges that adequately reflect the nature and full extent of the criminal conduct involved. This means that the charges should fairly describe both the kind and scope of unlawful activity; should be legally sufficient; should provide notice to the public of the seriousness of the conduct involved; and should negate any impression that, after committing one offense, an offender can commit others with impunity.
2. **Basis for Sentencing.** Proper charging also requires consideration of the end result of successful prosecution— the imposition of an appropriate sentence under all of the facts and circumstances of the case. In order to

achieve this result, it may not be necessary to charge a person with every offense for which he/she, may be liable. What is important is that the person be charged in such a manner that, if he/she is convicted, the court may impose an appropriate sentence, in light of all of the relevant facts and circumstances.

3. **Effect on the Government's Case.** When considering whether to include a particular charge in a proposed indictment or information, the attorney for the government should consider the possible effects of inclusion or exclusion of the charge on the government's case against the defendant or a codefendant. It is proper to consider the evidentiary consequences of failing to seek certain charges. For example, in a case in which a substantive offense was committed pursuant to an unlawful agreement, inclusion of a conspiracy count is permissible and may be desirable to ensure the introduction of all relevant evidence at trial. Similarly, it might be important to include a perjury or false statement count in an indictment charging other offenses, in order to give the jury a complete picture of the defendant's criminal conduct. Failure to include appropriate charges for which the proof is sufficient may not only result in the exclusion, of relevant evidence, but also may impair the prosecutor's ability to prove a coherent case, and lead to jury confusion. In this connection, it is important to remember that, in multi-defendant cases, the presence or absence of a particular charge against one defendant may affect the strength of the case against another defendant. In short, when the evidence exists, the charges should be structured so as to permit proof of the strongest case possible without undue burden on the administration of justice.

[cited in JM 6-4.210; JM 9-27.300]

[updated January 2018]

### 9-27.330 - PRE-CHARGE PLEA AGREEMENTS

Before filing or recommending charges pursuant to a precharge plea agreement, the attorney for the government should consult the plea agreement provisions of JM 9-27.430, relating to the selection of charges to which a defendant should be required to plead guilty.

[cited in JM 9-27.300]

[updated February 2017]

### 9-27.400 - PLEA AGREEMENTS GENERALLY

The attorney for the government may, in an appropriate case, enter into an agreement with a defendant that, upon the defendant's plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, he/she will not bring or will move for dismissal of other charges, take a certain position with respect to the sentence to be imposed, or take other action.

**Comment.** JM 9-27.400 permits, the disposition of federal criminal charges pursuant to plea agreements between defendants and government attorneys. Such negotiated dispositions should be distinguished from situations in which a defendant pleads guilty or nolo contendere to fewer than all counts of an information or indictment in the absence of any agreement with the government. Only the former type of disposition is covered by the provisions of JM 9-27.400 et seq.

Negotiated plea dispositions are explicitly sanctioned by Rule 11(c)(1) of the Federal Rules of Criminal Procedure, which provides that:

> An attorney for the government and the defendant's attorney, or the defendant when acting pro se, may discuss and reach a plea agreement. The court must not participate in these discussions. If the defendant pleads guilty or nolo contendere to either a charged offense or a lesser or related offense, the plea agreement may specify that an attorney for the government will:

> A. Not bring, or will move to dismiss, other charges;
> B. Recommend, or agree not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the

Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request does not bind the court; or

C. Agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement).

Three types of plea agreements are encompassed by the language of JM 9-27.400: 1) agreements whereby in return for the defendant's plea to a charged offense or to a lesser or related offense, other charges are not sought or are dismissed ("charge agreements"); 2) agreements pursuant to which the government takes a certain position regarding the sentence to be imposed ("sentence agreements"); and 3) agreements that combine a plea with a dismissal of charges and an undertaking by the prosecutor concerning the government's position at sentencing ("mixed agreements").

Plea agreements should reflect the totality of a defendant's conduct.  These agreements are governed by the same fundamental principles as are charging decisions: prosecutors will generally seek a plea to the most serious offense that is consistent with the nature and full extent of the defendant's conduct and likely to result in a sustainable conviction, informed by an individualized assessment of all of the facts and circumstances of each particular case. Charges should not be filed simply to exert leverage to induce a plea; nor should charges be abandoned to arrive at a plea bargain that does not reflect the seriousness of the defendant's conduct.

1. **Charge Agreements.** Charge agreements envision dismissal of counts in exchange for a plea.  As with the indictment decision, the prosecutor should seek a plea to the most serious readily provable offense(s) charged. Should a prosecutor determine in good faith after indictment that, as a result of a change in the evidence or for another reason (e.g., a need has arisen to protect sources and methods, including the identity of a particular witness until he or she testifies against a more significant defendant), a charge is not readily provable or that an indictment exaggerates the seriousness of an offense or offenses, a plea bargain may reflect the prosecutor's reassessment. There should be documentation, however, in any case in which the most serious offense charged is not pursued. Moreover, a decision not to prosecute a violation of federal law pursuant to Section 12(a) of the Classified Information Procedures Act would trigger a reporting requirement to the Congress, and may not take place without the approval of the Assistant Attorney General for National Security.

2. **Sentencing Agreements.** There are only two types of sentence bargains. Both are permissible, but one is more complicated than the other. First, prosecutors may bargain for a sentence that is within the specified United States Sentencing Commission's guideline range. This means that when a guideline range is 18 to 24 months, the prosecutor has discretion to agree to recommend a sentence of, for example, 18 to 20 months rather than to argue for a sentence at the top of the range. Such a plea does not require that the actual sentence range be determined in advance. The plea agreement may have wording to the effect that once the range is determined by the court, the United States will recommend a certain point in that range. Similarly, the prosecutor may agree to recommend a downward adjustment for acceptance of responsibility if he or she concludes in good faith that the defendant is entitled to the adjustment. Second, the prosecutor may seek to depart from the guidelines. This is more complicated than a bargain involving a sentence within a guideline range. Departures are discussed more generally below.

Department policy requires transparency and honesty in sentencing; federal prosecutors are expected to identify for the court departures when they agree to support them. For example, it would be improper for a prosecutor to agree that a departure is in order, but to conceal the agreement in a charge bargain that is presented to a court as a fait accompli so that there is neither a record of nor judicial review of the departure.

The language of JM 9-27.400 with respect to sentence agreements is intended to cover the entire range of positions that the government might wish to take at the time of sentencing. Among the options are: taking no position regarding the sentence; not opposing the defendant's request; requesting a specific type of sentence (e.g., a fine or probation), a specific fine or term of imprisonment, or not more than a specific fine or term of imprisonment; and requesting concurrent rather than consecutive sentences. Agreement to any such option must be consistent with the sentencing guidelines.

3. **Mixed Agreements**. Plea bargaining, both charge bargaining and sentence bargaining, must reflect the totality and

seriousness of the defendant's conduct and any departure to which the prosecutor is agreeing, and must be accomplished through appropriate sentencing guidelines provisions.

The basic policy is that charges are not to be bargained away or dropped in ways that represent a significant departure from the principles set forth herein. There are, however, two common circumstances in which charges may be dropped consistent with these principles.

First, if the applicable guideline range from which a sentence may be imposed would be unaffected, readily provable charges may be dismissed or dropped as part of a plea bargain. It is important to know whether dropping a charge may affect a sentence, including monetary penalties such as restitution or forfeiture. For example, the multiple offense rules in Part D of Chapter 3 of the guidelines and the relevant conduct standard set forth in Sentencing Guideline § 1B1.3(a)(2) will mean that certain dropped charges will be counted for purposes of determining the sentence, subject to the statutory maximum for the offense or offenses of conviction. It is vital that federal prosecutors understand when conduct that is not charged in an indictment or conduct that is alleged in counts that are to be dismissed pursuant to a bargain may be counted for sentencing purposes and when it may not be. For example, in the case of a defendant who could be charged with five bank robberies, a decision to charge only one or to dismiss four counts pursuant to a bargain precludes any consideration of the four uncharged or dismissed robberies in determining a guideline range, unless the plea agreement included a stipulation as to the other robberies. By contrast, in the case of a defendant who could be charged with five counts of fraud, the total amount of money involved in a fraudulent scheme will be considered in determining a guideline range even if the defendant pleads guilty to a single count and there is no stipulation as to the other counts.

Second, federal prosecutors may drop readily provable charges with the specific approval of the United States Attorney, appropriate Assistant Attorney General, or designated supervisory level official for reasons set forth in the file of the case. This exception recognizes that the aims of the Sentencing Reform Act must be sought without ignoring other, critical aspects of the federal criminal justice system. For example, approvals to drop charges in a particular case might be given because the United States Attorney's office is particularly over-burdened, the case would be time-consuming to try, and proceeding to trial would significantly reduce the total number of cases disposed of by the office.

In Chapter 5, Part K of the Sentencing Guidelines, the Commission has listed departures that may be considered by a court in imposing a sentence. Moreover, Guideline § 5K2.0 recognizes that a sentencing court may consider a ground for departure that has not been adequately considered by the Commission. A departure requires approval by the court. It violates the spirit of the guidelines and Department policy for prosecutor to enter into a plea bargain which is based upon the prosecutor's and the defendant's agreement that a departure is warranted, but that does not reveal to the court the existence of the departure and thereby afford the court an opportunity to reject it.

The Commission has recognized those bases for departure that are commonly justified. Accordingly, before the government may seek a departure based on a factor other than one set forth in Chapter 5, Part X, approval of the United States Attorney, appropriate Assistant Attorney General, or designated supervisory official is required. This approval is required whether or not a case is resolved through a negotiated plea.

Section 5K1.1 of the Sentencing Guidelines allows the United States to file a pleading with the sentencing court which permits the court to depart below the indicated guideline, on the basis that the defendant provided substantial assistance in the investigation or prosecution of another. Authority to approve such pleadings is limited to the United States Attorney, the Chief Assistant United States Attorney, and supervisory criminal Assistant United States Attorneys, or a committee including at least one of these individuals. Similarly, for Department of Justice attorneys, approval authority should be vested in a Section Chief or Office Director, or such official's deputy, or in a committee which includes at least one of these individuals.

Every United States Attorney or Department of Justice Section Chief (or Assistant Chief) or Office Director shall maintain documentation of the facts behind and justification for each substantial assistance pleading. The repository or repositories of this documentation need not be the case file itself. Freedom of Information Act or other considerations may suggest that a separate form showing the final decision be maintained.

The procedures described above shall also apply to Motions filed pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure, where the sentence of a cooperating defendant is reduced after sentencing on motion of the United

States. Such a filing is deemed for sentencing purposes to be the equivalent of a substantial assistance pleading.

The concession required by the government as part of a plea agreement, whether it be a "charge agreement," a "sentence agreement," or a "mixed agreement," should be weighed by the responsible government attorney in the light of the probable advantages and disadvantages of the plea disposition proposed in the particular case. Particular care should be exercised in considering whether to enter into a plea agreement pursuant to which the defendant will enter a nolo contendere plea. As discussed in JM 9-27.500 and JM 9-16.000, there are serious objections to such pleas and they should be opposed unless the appropriate Assistant Attorney General concludes that the circumstances are so unusual that acceptance of such a plea would be in the public interest.

[updated February 2018] [cited in JM 9-16.300; JM 9-16.320; JM 9-27.300; JM 9-28.1300]

### 9-27.410 - PLEA AGREEMENTS - COOPERATION

In Chapter 5, Part K of the Sentencing Guidelines, the Commission has listed departures that may be considered by a court in imposing a sentence. Moreover, Guideline § 5K2.0 recognizes that a sentencing court may consider a ground for departure that has not been adequately considered by the Commission. A departure requires approval by the court. It violates the spirit of the guidelines and Department policy for a prosecutor to enter into a plea bargain which is based upon the prosecutor's and the defendant's agreement that a departure is warranted, but that does not reveal to the court the existence of the departure and thereby afford the court an opportunity to reject it.

The Commission has recognized those bases for departure that are commonly justified. Accordingly, before the government may seek a departure based on a factor other than one set forth in Chapter 5, Part X, approval of the United States Attorney, appropriate Assistant Attorney General, or designated supervisory official is required. This approval is required whether or not a case is resolved through a negotiated plea.

Section 5K1.1 of the Sentencing Guidelines allows the United States to file a pleading with the sentencing court, which permits the court to depart below the indicated guideline, on the basis that the defendant provided substantial assistance in the investigation or prosecution of another. Authority to approve such pleadings is limited to the United States Attorney, the Chief Assistant United States Attorney, and supervisory criminal Assistant United States Attorneys, or a committee including at least one of these individuals. Similarly, for Department of Justice attorneys, approval authority should be vested in a Section Chief or Office Director, or such official's deputy, or in a committee that includes at least one of these individuals.

Every United States Attorney or Department of Justice Section Chief (or Assistant Chief) or Office Director shall maintain documentation of the facts behind and justification for each substantial assistance pleading in the official file. Freedom of Information Act or other considerations may suggest that the final decision be memorialized on a separate form rather than on the recommendation itself.

The procedures described above shall also apply to Motions filed pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure, where the sentence of a cooperating defendant is reduced after sentencing on motion of the United States. Such a filing is deemed for sentencing purposes to be the equivalent of a substantial assistance pleading.

[added February 2018]

### 9-27.420 - PLEA AGREEMENTS—CONSIDERATIONS TO BE WEIGHED

In determining whether it would be appropriate to enter into a plea agreement, the attorney for the government should weigh all relevant considerations, including:

1. The defendant's willingness to cooperate in the investigation or prosecution of others;
2. The defendant's history with respect to criminal activity;
3. The nature and seriousness of the offense or offenses charged;
4. The defendant's remorse or contrition and his/her willingness to assume responsibility for his/her conduct;
5. The desirability of prompt and certain disposition of the case;
6. The likelihood of obtaining a conviction at trial;

7. The probable effect on witnesses;

8. The probable sentence or other consequences if the defendant is convicted;

9. The public interest in having the case tried rather than disposed of by a guilty plea;

10. The expense of trial and appeal;

11. The need to avoid delay in the disposition of other pending cases; and

12. The interests of the victim, including any effect upon the victim's right to restitution.

**Comment.** JM 9-27.420 sets forth some of the appropriate considerations to be weighed by the attorney for the government in deciding whether to enter into a plea agreement with a defendant pursuant to the provisions of Rule 11 of the Federal Rules of Criminal Procedure. The provision is not intended to suggest the desirability or lack of desirability of a plea agreement in any particular case or to be construed as a reflection on the merits of any plea agreement that actually may be reached; its purpose is solely to assist attorneys for the government in exercising their prosecutorial discretion as to whether a plea agreement would be appropriate in a particular case. Government attorneys should consult with the investigating agency involved and the victim, if appropriate or required by law.

1. **Defendant's Cooperation.** The defendant's willingness to provide timely and useful cooperation as part of his/her plea agreement should be given serious consideration. The weight it deserves will vary, of course, depending on the nature and value of the cooperation offered and whether the same benefit can be obtained without having to make the charge or sentence concession that would be involved in a plea agreement. In many situations, for example, all necessary cooperation in the form of testimony can be obtained through a compulsion order under 18 U.S.C. §§ 6001-6003. In such cases, that approach should be attempted unless, under the circumstances, it would seriously interfere with securing the person's conviction. If the defendant's cooperation is sufficiently substantial to justify the filing of a 5K1.1 Motion for a downward departure, the procedures set out in JM 9-27.410 shall be followed.

2. **Defendant's Criminal History.** One of the principal arguments against the practice of plea bargaining is that it results in leniency that reduces the deterrent impact of the law and leads to recidivism on the part of some offenders. Although this concern is probably most relevant in non-federal jurisdictions that must dispose of large volumes of routine cases with inadequate resources, it should nevertheless be kept in mind by federal prosecutors, especially when dealing with repeat offenders or "career criminals." Particular care should be taken in the case of a defendant with a prior criminal record to ensure that society's need for protection is not sacrificed in the process of arriving at a plea disposition. In this connection, it is proper for the government attorney to consider not only the defendant's past, but also facts of other criminal involvement not resulting in conviction. By the same token, of course, it is also proper to consider a defendant's absence of past criminal involvement and his/her past cooperation with law enforcement officials. Note that 18 U.S.C. § 924(e), as well as Sentencing Guidelines §§ 4B1.1 and 4B1.4 address "career criminals" and "armed career criminals." 18 U.S.C. § 3559(c)—the so-called "three strikes" statute—addresses serious violent recidivist offenders. The application of these provisions to a particular case may affect the plea negotiation posture of the parties.

3. **Nature and Seriousness of Offense Charged.** Important considerations in determining whether to enter into a plea agreement include the nature and seriousness of the offense or offenses charged. In weighing those factors, the attorney for the government should bear in mind the interests sought to be protected by the statute defining the offense (e.g., national security, constitutional rights, the governmental process, personal safety, public welfare, or property), as well as nature and degree of harm caused or threatened to those interests and any attendant circumstances that aggravate or mitigate the seriousness of the offense in the particular case.

4. **Defendant's Attitude.** A defendant may demonstrate apparently genuine remorse or contrition, and a willingness to take responsibility for his/her criminal conduct by, for example, efforts to compensate the victim for injury or loss, or otherwise to ameliorate the consequences of his/her acts. These are factors that bear upon the likelihood of his/her repetition of the conduct involved and that may properly be considered in deciding whether a plea agreement would be appropriate. Sentencing Guideline § 3E1.1 allows for a downward adjustment upon acceptance of responsibility by the defendant. It is permissible for a prosecutor to enter a plea agreement which approves such an adjustment if the defendant otherwise meets the requirements of the section.

It is particularly important that the defendant not be permitted to enter a guilty plea under circumstances that will allow him/her later to proclaim lack of culpability or even complete innocence. Such consequences can be avoided only if the court and the public are adequately informed of the nature and scope of the illegal activity and of the defendant's complicity and culpability. To this end, the attorney for the government is strongly encouraged to enter into a plea agreement only with the defendant's assurance that he/she will admit, the facts of the offense and of his/her culpable participation therein. A plea agreement may be entered into in the absence of such an assurance, but only if the defendant is willing to accept without contest a statement by the government in open court of the facts it could prove to demonstrate his/her guilt beyond a reasonable doubt. Except as provided in JM 9-27.440, the attorney for the government should not enter into a plea agreement with a defendant who admits his/her guilt but disputes an essential element of the government's case.

When negotiating a plea agreement, the attorney for the government should also not seek to have a defendant waive claims of ineffective assistance of counsel whether those claims are made on collateral attack or, when permitted by circuit law, made on direct appeal. As long as prosecutors exempt ineffective-assistance claims from their waiver provisions, they may request waivers of appeal and of post -conviction remedies to the full extent permitted by law as a component of plea discussions and agreements.

5. **Prompt Disposition.** In assessing the value of prompt disposition of a criminal case, the attorney for the government should consider the timing of a proffered plea. A plea offer by a defendant on the eve of trial after the case has been fully prepared is hardly as advantageous from the standpoint of reducing public expense as one offered months or weeks earlier. In addition, a last minute plea adds to the difficulty of scheduling cases efficiently and may even result in wasting the prosecutorial and judicial time reserved for the aborted trial. For these reasons, governmental attorneys should make clear to defense counsel at an early stage in the proceedings that, if there are to be any plea discussions, they must be concluded prior to a certain date, and well in advance of the trial date. *See* USSG § 3E1.1(b)(1). However, avoidance of unnecessary trial preparation and scheduling disruptions are not the only benefits to be gained from prompt disposition of a case by means of a guilty plea. Such a disposition also saves the government and the court the time and expense of trial and appeal. In addition, a plea agreement facilitates prompt imposition of sentence, thereby promoting the overall goals of the criminal justice system. Thus, occasionally it may be appropriate to enter into a plea agreement even after the usual time for making such agreements has passed.

6. **Likelihood of Conviction.** The trial of a criminal case inevitably involves risks and uncertainties, both for the prosecution and for the defense. Many factors, not all of which can be anticipated, can affect the outcome. To the extent that these factors can be identified, they should be considered in deciding whether to accept a plea or go to trial. In this connection, the prosecutor should weigh the strength of the government's case relative to the anticipated defense case, bearing in mind legal and evidentiary problems that might be expected, as well as the importance of the credibility of witnesses. However, although it is proper to consider factors bearing upon the likelihood of conviction in deciding whether to enter into a plea agreement, it obviously is improper for the prosecutor to attempt to dispose of a case by means of a plea agreement if he/she is not satisfied that the legal standards for guilt are met.

7. **Effect on Witnesses.** Attorneys for the government should bear in mind that it is often burdensome for witnesses to appear at trial and that sometimes to do so may cause them serious embarrassment or even place them in jeopardy of physical or economic retaliation. The possibility of such adverse consequences to witnesses should not be overlooked in determining whether to go to trial or attempt to reach a plea agreement. Another possibility that may have to be considered is revealing sources and methods, such as the identity of informants. For example, when an informant testifies at trial, his/her identity and relationship to the government become matters of public record. As a result, in addition to possible adverse consequences to the informant, there is a strong likelihood that the informant's usefulness in other investigations will be seriously diminished or destroyed. These are considerations that should be discussed with the investigating agency involved, as well as with any other agencies known to have an interest in using the informant in their investigations.

8. **Probable Sentence.** In determining whether to enter into a plea agreement, the attorney for the government may properly consider the probable outcome of the prosecution in terms of the sentence or other consequences for the defendant in the event that a plea agreement is reached. If the proposed agreement is a "sentence agreement" or a "mixed agreement," the prosecutor should realize that the

position he/she agrees to take with respect to sentencing may have a significant effect on the sentence that is actually imposed. If the proposed agreement is a "charge agreement," the prosecutor should bear in mind the extent to which a plea to fewer or lesser offenses may reduce the sentence that otherwise could be imposed. In either event, it is important that the attorney for the government be aware of the need to preserve the basis for an appropriate sentence under all the circumstances of the case. Thorough knowledge of the Sentencing Guidelines, any applicable statutory minimum sentences, and any applicable sentence enhancements is clearly necessary to allow the prosecutor to accurately and adequately evaluate the effect of any plea agreement.

9. **Trial Rather Than Plea.** There may be situations in which the public interest might better be served by having a case tried rather than by having it disposed of by means of a guilty plea. These include situations in which it is particularly important to permit a clear public understanding that "justice is done" through exposing the exact nature of the defendant's wrongdoing at trial, or in which a plea agreement might be misconstrued to the detriment of public confidence in the criminal justice system. For this reason, the prosecutor should be careful not to place undue emphasis in certain cases on factors that favor disposition of a case pursuant to a plea agreement over a trial.

10. **Expense of Trial and Appeal.** In assessing the expense of trial and appeal that would be saved by a plea disposition, the attorney for the government should consider not only such monetary costs as juror and witness fees, but also the time spent by judges, prosecutors, and law enforcement personnel who may be needed to testify or provide other assistance at trial. In this connection, the prosecutor should bear in mind the complexity of the case, the number of trial days and witnesses required, and any extraordinary expenses that might be incurred such as the cost of sequestering the jury.

11. **Prompt Disposition of Other Cases.** A plea disposition in one case may facilitate the prompt disposition of other cases, including cases in which prosecution might otherwise be declined. This may occur simply because prosecutorial, judicial, or defense resources will become available for use in other cases, or because a plea by one of several defendants may have a "domino effect," leading to pleas by other defendants. In weighing the importance of these possible consequences, the attorney for the government should consider the state of the criminal docket and the speedy trial requirements in the district, the desirability of handling a larger volume of criminal cases, and the workloads of prosecutors, judges, and defense attorneys in the district.

12. **The Interests of the Victim.** Some victims may view a plea as denying them the opportunity to see the defendant answer for his crimes, while others may be grateful for a faster resolution of a difficult phase in their lives. In any event, it is useful for the prosecutor to understand the victim's desires with regard to a plea, and to explain to the victim the impact of any plea on the victim and on the defendant. For instance, in a plea, the defendant may agree to provide restitution to victims beyond those charged in the indictment, while those individuals would not receive restitution following a trial. In these discussions, prosecutors are advised to remember that victims are not subject to any rules governing nondisclosure of information, and so may wish to focus on soliciting the victim's views and to limit information provided to the victim to that which is publicly available.

13. **Other Considerations.** The Attorney General or the Deputy Attorney General may periodically issue guidance that includes other considerations that should be evaluated by a prosecutor.

[cited in JM 9-28.1300]

[updated February 2018]

9-27.430 - SELECTING PLEA AGREEMENT CHARGES

If a prosecution is to be concluded pursuant to a plea agreement, the defendant should be required to plead to a charge or charges:

1. That is  the most serious readily provable charge consistent with the nature and extent of his/her criminal conduct;
2. That has an adequate factual basis;
3. That makes likely the imposition of an appropriate sentence and order of restitution, if appropriate, under all the circumstances of the case; and

4. That does not adversely affect the investigation or prosecution of others.

**Comment**. JM 9-27.430 sets forth the considerations that should be taken into account in selecting the charge or charges to which a defendant should be required to plead guilty once it has been decided to dispose of the case pursuant to a plea agreement. The considerations are essentially the same as those governing the selection of charges to be included in the original indictment or information. See JM 9-27.300.

1. **Relationship to Criminal Conduct.** The charge or charges to which a defendant pleads guilty should be consistent with the defendant's criminal conduct, both in nature and in scope. This charge ordinarily will be the most serious one, as defined in JM 9-27.300.This principle governs the number of counts to which a plea should be required in cases involving different offenses, or in cases involving a series of familiar offenses. Therefore the prosecutor must be familiar with the Sentencing Guideline rules applicable to grouping offenses (see USSG § 3D) and to relevant conduct (see USSG § 1B1.3) among others. In regard to the seriousness of the offense, the guilty plea should assure that the public record of conviction provides an adequate indication of the defendant's conduct. With respect to the number of counts, the prosecutor should take care to assure that no impression is given that multiple offenses are likely to result in no greater a potential penalty than is a single offense. The requirement that a defendant plead to a charge, that is consistent with the nature and extent of his/her criminal conduct is not inflexible. Although cooperation is usually acknowledged through a Sentencing Guideline § 5K1.1 filing, there may be situations involving cooperating defendants in which considerations such as those discussed in JM 9-27.600, take precedence. Such situations should be approached cautiously, however. Unless the government has strong corroboration for the cooperating defendant's testimony, his/her credibility may be subject to successful impeachment if he/she is permitted to plead to an offense that appears unrelated in seriousness or scope to the charges against the defendants on trial. It is also doubly important in such situations for the prosecutor to ensure that the public record of the plea demonstrates, the full extent of the defendant's involvement in the criminal activity, giving rise to the prosecution.

2. **Factual Basis.** The attorney for the government should also bear in mind the legal requirement that there be a factual basis for the charge or charges to which a guilty plea is entered. This requirement is intended to assure against conviction after a guilty plea of a person who is not in fact guilty. Moreover, under Rule 11(b)(3)) of the Federal Rules of Criminal Procedure, a court may not enter a judgment upon a guilty plea without "determin[ing] that, there is a factual basis for the plea." For this reason, it is essential that the charge or charges selected as the subject of a plea agreement be such as could be prosecuted independently of the plea under these principles. However, as noted, in cases in which Alford or nolo contendere pleas are tendered, the attorney for the government may wish to make a stronger factual showing. In such cases there may remain some doubt as to the defendant's guilt even after the entry of his/her plea. Consequently, in order to avoid creating a misleading impression, the government should ask leave of the court to make a proffer of the facts available to it that show the defendant's guilt beyond a reasonable doubt.

   In addition, the Department's policy is only to stipulate to facts that accurately reflect the defendant's conduct. If a prosecutor wishes to support a departure from the guidelines, he or she should candidly do so and not stipulate to facts that are untrue. Stipulations to untrue facts are unethical. If a prosecutor has insufficient facts to contest a defendant's effort to seek a downward departure or to claim an adjustment, the prosecutor can say so. If the presentence report states facts that are inconsistent with a stipulation in which a prosecutor has joined, the prosecutor should object to the report or add a statement explaining the prosecutor's understanding of the facts or the reason for the stipulation.

   Recounting the true nature of the defendant's involvement in a case will not always lead to a higher sentence. Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others and the government agrees that self-incriminating information so provided will not be used against the defendant, Sentencing Guideline § 1B1.8 provides that the information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement. The existence of an agreement not to use information should be clearly reflected in the case file, the applicability of Sentencing Guideline § 1B1.8 should be documented, and the incriminating information must be disclosed to the court or the probation officer, even though it may not be used in determining a guideline sentence. Note that such information may still be used by the court in determining whether to depart from the guidelines and the extent of the departure. *See* USSG § 1B1.8.

3. **Basis for Sentencing.** In order to guard against inappropriate restriction of the court's sentencing options, the plea agreement should provide adequate scope for sentencing under all the circumstances of the case. To the extent that the plea agreement requires the government to take a position with respect to the sentence to be imposed, there should be little danger since the court will not be bound by the government's position. When a "charge agreement" is involved, however, the court will be limited to imposing the maximum term authorized by statue as well as the Sentencing Guideline range for the offense, to which the guilty plea is entered. Thus, as noted in JM 9-27.320above the prosecutor should take care to avoid a charge agreement that would unduly restrict the court's sentencing authority. In this connection, as in the initial selection of charges, the prosecutor should take into account the purposes of sentencing, the penalties provided in the applicable statutes (including mandatory minimum penalties), the gravity of the offense, any aggravating or mitigating factors, and any post conviction consequences to which the defendant may be subject. In addition, if restitution is appropriate under the circumstances of the case, the plea agreement should specify the amount of restitution. See 18 U.S.C. § 3663 et seq.; 18 U.S.C. §§ 2248, 2259, 2264 and 2327; United States v. Arnold, 947 F.2d 1236, 1237-38 (5th Cir. 1991); and JM 9-16.320.

4. **Effect on Other Cases.** In a multiple-defendant case, care must be taken to ensure that the disposition of the charges against one defendant does not adversely affect the investigation or prosecution of co-defendants. Among the possible adverse consequences to be avoided are the negative jury appeal that may result when relatively less culpable defendants are tried in the absence of a more culpable defendant, or when a principal prosecution witness appears to be equally culpable as the defendants but has been permitted to plead to a significantly less serious offense; the possibility that one defendant's absence from the case will render useful evidence inadmissible at the trial of co-defendants; and the giving of questionable exculpatory testimony on behalf of the other defendants by the defendant who has pled guilty.

[updated February 2018]

9-27.440 - PLEA AGREEMENTS WHEN DEFENDANT DENIES GUILT

The attorney for the government should not, except with the approval of the United States Attorney and the appropriate Assistant Attorney General enter into a plea agreement if the defendant maintains his/her innocence with respect to the charge or charges to which he/she offers to plead guilty. In a case in which the defendant tenders a plea of guilty but denies committing the offense to which he/she offers to plead guilty, the attorney for the government should make an offer of proof of all facts known to the government to support the conclusion that the defendant is in fact guilty. See also JM 9-16.015, which discusses the approval requirement.

**Comment.** JM 9-27.440 concerns plea agreements involving "Alford" pleas—guilty pleas entered by defendants who nevertheless claim to be innocent. In *North Carolina v. Alford*, 400 U.S. 25 (1970), the Supreme Court held that the Constitution does not prohibit a court from accepting a guilty plea from a defendant who simultaneously maintains his/her innocence, so long as the plea is entered voluntarily and intelligently and there is a strong factual basis for it. The Court reasoned that there is no material difference between a plea of nolo contendere, where the defendant does not expressly admit his/her guilt, and a plea of guilty by a defendant who affirmatively denies his/her guilt.

Despite the constitutional validity of *Alford* pleas, such pleas should be avoided except in the most unusual circumstances, even if no plea agreement is involved and the plea would cover all pending charges.  As one court put it, "the public might well not understand or accept the fact that a defendant who denied his guilt was nonetheless placed in a position of pleading guilty and going to jail." *See United States v. Bednarski*, 445 F.2d 364, 366 (1st Cir. 1971). Consequently, it is often preferable to have a jury resolve the factual and legal dispute between the government and the defendant, rather than have government attorneys encourage defendants to plead guilty under circumstances that the public might regard as questionable or unfair. For this reason, government attorneys should not enter into *Alford* plea agreements, without the approval of the United States Attorney and the appropriate Assistant Attorney General. Apart from refusing to enter into a plea agreement, however, the degree to which the Department can express its opposition to *Alford* pleas may be limited. Although a court may accept a proffered plea of nolo contendere after  considering "the parties' views and the public interest in the effective administration of justice," (Fed. R. Crim. P. Rule 11 (a)(3)), at least one court has concluded that it is an abuse of discretion to refuse to accept a guilty plea "solely because the defendant does not admit the alleged facts of the crime." *United States v. Gaskins*, 485 F.2d 1046, 1048 (D.C. Cir. 1973); *see also United States v. Bednarski*, *supra*; *United States v. Boscoe*, 518 F.2d 95 (1st Cir. 1975). Nevertheless, government

attorneys can and should discourage *Alford* pleas by refusing to agree to terminate prosecutions where an *Alford* plea is proffered to fewer than all of the charges pending. As is the case with guilty pleas generally, if such a plea to fewer than all the charges is tendered and accepted over the government's objection, the attorney for the government should proceed to trial on any remaining charges not barred on double jeopardy grounds unless the United States Attorney, or in cases handled by Departmental attorneys, the appropriate Assistant Attorney General, approves dismissal of those charges

Government attorneys should also take full advantage of the opportunity afforded by Rule 11(b)(3) in an *Alford* case to thwart the defendant's efforts to project a public image of innocence. Under Rule 11(b)(3), the court must be satisfied that there is "a factual basis" for a guilty plea. However, the Rule does not require that the factual basis for the plea be provided only by the defendant. *See United States v. Navedo*, 516 F.2d 29 (2d Cir. 1975); *Irizarry v. United States*, 508 F.2d 960 (2d Cir. 1974); *United States v. Davis*, 516 F.2d 574 (7th Cir. 1975). Accordingly, attorneys for the government in *Alford* cases should endeavor to establish as strong a factual basis for the plea as possible not only to satisfy the requirement of Rule 11(b)(3), but also to minimize the adverse effects of *Alford* pleas on public perceptions of the administration of justice.

[updated February 2018] [cited in JM 6-4.330; JM 9-28.1300]

### 9-27.450 - RECORDS OF PLEA AGREEMENTS

All negotiated plea agreements to felonies or to misdemeanors negotiated from felonies shall be in writing and filed with the court.

**Comment.** JM 9-27.450 is intended to facilitate compliance with Rule 11 of the Federal Rules of Criminal Procedure and to provide a safeguard against misunderstandings that might arise concerning the terms of a plea agreement. Rule 11(c)(2) requires that a plea agreement be disclosed in open court (except upon a showing of good cause in which case disclosure may be made in camera), while Rule 11(c)(4) requires that the disposition provided for in the agreement be embodied in the judgment. Compliance with these requirements will be facilitated if the agreement has been reduced to writing in advance. Any time a defendant enters into a negotiated plea, that fact and the conditions of the agreement should also be maintained in the office case file. Written agreements will facilitate efforts by the Department to monitor compliance by prosecutors with Department policies and the guidelines. Documentation may include a copy of the court transcript at the time the plea is taken in open court.

There shall be within each office a formal system for approval of negotiated pleas. The approval authority shall be vested in at least a supervisory criminal Assistant United States Attorney, or a supervisory attorney of a litigating division in the Department of Justice, who will have the responsibility of assessing the appropriateness of the plea agreement under the policies of the Department of Justice pertaining to pleas. Where certain predictable fact situations arise with great frequency and are given identical treatment, the approval requirement may be met by a written instruction from the appropriate supervisor which describes with particularity the standard plea procedure to be followed, so long as that procedure is otherwise within Departmental guidelines. An example would be a border district that routinely deals with a high volume of illegal alien cases daily.

[updated February 2018]

### 9-27.500 - OFFERS TO PLEAD NOLO CONTENDERE—OPPOSITION EXCEPT IN UNUSUAL CIRCUMSTANCES

The attorney for the government should oppose the acceptance of a plea of nolo contendere unless the United States Attorney and the appropriate Assistant Attorney General conclude that the circumstances of the case are so unusual that acceptance of such a plea would be in the public interest. See JM 9-16.010 (discussing the approval requirement).

**Comment.** Rule 11(a)(3) of the Federal Rules of Criminal Procedure, requires the court to consider "the parties' views and the public interest in the effective administration of justice" before it accepts a plea of nolo contendere. Thus, it is clear that a criminal defendant has no absolute right to enter a nolo contendere ("nolo")  plea. The Department has long attempted to discourage the disposition of criminal cases by means of nolo pleas.

Government attorneys have been instructed for many years not to consent to nolo pleas except in the most unusual circumstances, and to do so then only with Departmental approval. Federal prosecutors should oppose the acceptance of a nolo plea, unless the United States Attorney and the appropriate Assistant Attorney General concludes that the circumstances are so unusual that acceptance of the plea would be in the public interest.

[updated February 2018] [cited in <u>JM 6-2.000</u>; <u>JM 6-4.320</u>; <u>JM 9-28.1300</u>]

### 9-27.520 - OFFERS TO PLEAD NOLO CONTENDERE—OFFER OF PROOF

In any case in which a defendant seeks to enter a plea of nolo contendere, the attorney for the government should make an offer of proof in open court of facts known to the government that support the conclusion that the defendant has in fact committed the offense charged. See also <u>JM 9-16.010</u>.

**Comment.** If a defendant seeks to avoid admitting guilt by offering to plead nolo contendere, the attorney for the government should, in open court, make an offer of proof of facts known to the government that support the conclusion that the defendant has, in fact, committed the offense charged. This should be done in open court even in the rare case in which the government does not oppose the entry of a nolo plea. In addition, as is the case with respect to guilty pleas, the attorney for the government should urge the court to require the defendant to admit publicly the facts underlying the criminal charges. These precautions should minimize the effectiveness of any subsequent efforts by the defendant to portray himself/herself as technically liable, but not seriously culpable.

[updated February 2018]

### 9-27.530 - ARGUMENT IN OPPOSITION OF NOLO CONTENDERE PLEA

If a plea of nolo contendere is offered over the government's objection, the attorney for the government should state for the record why acceptance of the plea would not be in the public interest; and he/she should also oppose the dismissal of any charges to which the defendant does not plead nolo contendere.

**Comment.** When a plea of nolo contendere is offered over the government's objection, the prosecutor should take full advantage of Rule 11(a)(3) of the Federal Rules of Criminal Procedure, to state for the record why acceptance of the plea would not be in the public interest. In addition to reciting  facts that could be proved to show the defendant's guilt, the prosecutor should bring to the court's attention whatever arguments exist for rejecting the plea. At the very least, a forceful presentation should make it clear to the public that the government is unwilling to condone the entry of a special plea that may help the defendant avoid legitimate consequences of his/her guilt. If the nolo plea is offered to fewer than all charges, the prosecutor should also oppose the dismissal of the remaining charges.

[cited in <u>JM 6-4.320</u>]

[updated February 2018]

### 9-27.600 - ENTERING INTO NON-PROSECUTION AGREEMENTS IN RETURN FOR COOPERATION—GENERALLY

Except as hereafter provided, the attorney for the government may, with supervisory approval, enter into a non-prosecution agreement in exchange for a person's cooperation when, in his/her judgment, the person's timely cooperation appears to be necessary to the public interest and other means of obtaining the desired cooperation are unavailable or would not be effective.

**Comment.**

1. **Fifth Amendment Privileges.** In many cases, it may be important to the success of an investigation or prosecution to obtain the testimony or other cooperation of a person who is himself/herself implicated in the criminal conduct being investigated or prosecuted. However, because of his/her involvement, the person may refuse to cooperate because of a desire not to incriminate himself or herself, including, for example, by invoking his/her Fifth Amendment privilege against compulsory self-incrimination. In this situation, there are several

possible approaches the prosecutor can take to render the privilege inapplicable, induce its waiver, or otherwise obtain the testimony or cooperation.

a. First, if time permits, the person may be charged, tried, and convicted before his/her cooperation is sought in the investigation or prosecution of others.

b. Second, the person may be willing to cooperate if the charges or potential charge against him/her are reduced in number or degree in return for his/her cooperation and his/her entry of a guilty plea to the remaining charges. An agreement to file a motion pursuant to Sentencing Guideline § 5K1.1 or Rule 35 of the Federal Rules of Criminal Procedure after the defendant gives full and complete cooperation is the preferred method for securing such cooperation. Usually such a concession by the government will be all that is necessary, or warranted, to secure the cooperation sought. Since it is certainly desirable as a matter of policy that an offender be required to incur at least some liability for his/her criminal conduct, government attorneys should attempt to secure this result in all appropriate cases, following the principles set forth in JM 9-27.430 to the extent practicable.

c. The third method for securing the cooperation of a potential defendant is by means of a court order under 18 U.S.C. §§ 6001-6003. Those statutory provisions govern the conditions under which uncooperative witnesses may be compelled to testify or provide information notwithstanding their invocation of the privilege against compulsory self incrimination. In brief, under the so-called "use immunity" provisions of those statutes, the court may order the person to testify or provide other information, but neither his/her testimony nor the information he/she provides may be used against him/her, directly or indirectly, in any criminal case except a prosecution for perjury or other failure to comply with the order. Ordinarily, these "use immunity" provisions should be relied on in cases in which attorneys for the government need to obtain sworn testimony or the production of information before a grand jury or at trial, and in which there is reason to believe that the person will refuse to testify or provide the information on the basis of his/her privilege against compulsory self-incrimination. See JM 9-23.000. Offers of immunity and immunity agreements should be in writing. Consideration should be given to documenting the evidence available prior to the immunity offer.

d. Finally, there may be cases in which it is impossible or impractical to employ the methods described above to secure the necessary information or other assistance, and in which the person is willing to cooperate only in return for an agreement that he/she will not be prosecuted at all for what he/she has done. The provisions set forth hereafter describe the conditions that should be met before such an agreement is made, as well as the procedures recommended for such cases

It is important to note that these provisions apply only if the case involves an agreement with a person who might otherwise be prosecuted. If the person reasonably is viewed only as a potential witness rather than a potential defendant, and the person is willing to cooperate, there is no need to consult these provisions.

JM 9-27.600 describes three circumstances that should exist before government attorneys enter into non-prosecution agreements in return for cooperation: (1)the unavailability or ineffectiveness of other means of obtaining the desired cooperation; (2)the apparent necessity of the cooperation to the public interest; and (3) the approval of such a course of action by an appropriate supervisory official.

2. **Unavailability or Ineffectiveness of Other Means.** As indicated above, non-prosecution agreements are only one of several methods by which the prosecutor can obtain the cooperation of a person whose criminal involvement makes him/her a potential subject of prosecution. Other methods - such as seeking cooperation after trial and conviction, bargaining for cooperation as part of a plea agreement, and compelling cooperation under a "use immunity" order - involve prosecuting the person or at least leaving open the possibility of prosecuting him/her on the basis of independently obtained evidence. Since these outcomes are clearly preferable to permitting an offender to avoid any liability for his/her conduct, the possible use of an alternative to a non-prosecution agreement should be given serious consideration in the first instance.

Another reason for using an alternative to a non-prosecution agreement to obtain cooperation concerns the practical advantage in terms of the person's credibility if he/she testifies at trial. If the person already has been convicted, either after trial or upon a guilty plea, for participating in the events about which he/she testifies, his/her testimony is apt to be far more credible than if it appears to the trier of fact that he/she is getting off "scot

free." Similarly, if his/her testimony is compelled by a court order, he/she cannot properly be portrayed by the defense as a person who has made a "deal" with the government and whose testimony is, therefore, suspect; his/her testimony will have been forced from him/her, not bargained for.

In some cases, however, there may be no effective means of obtaining the person's timely cooperation short of entering into a non-prosecution agreement. The person may be unwilling to cooperate fully in return for a reduction of charges, the delay involved in bringing him/her to trial might prejudice the investigation or prosecution in connection with which his/her cooperation is sought and it may be impossible or impractical to rely on the statutory provisions for compulsion of testimony or production of evidence. One example of the latter situation is a case in which the cooperation needed does not consist of testimony under oath or the production of information before a grand jury or at trial. Other examples are cases in which time is critical, or where use of the procedures of 18 U.S.C. § 6001-6003 would unreasonably disrupt the presentation of evidence to the grand jury or the expeditious development of an investigation, or where compliance with the statute of limitations or the Speedy Trial Act precludes timely application for a court order.

Only when it appears that the person's timely cooperation cannot be obtained by other means, or cannot be obtained effectively, should the attorney for the government consider entering into a non-prosecution agreement.

3. **Public Interest.** If he/she concludes that a non-prosecution agreement would be the only effective method for obtaining cooperation, the attorney for the government should consider whether, balancing the cost of foregoing prosecution against the potential benefit of the person's cooperation, the cooperation sought appears necessary to the public interest. This "public interest" determination is one of the conditions precedent to an application under 18 U.S.C. § 6003 for a court order compelling testimony. Like a compulsion order, a non-prosecution agreement limits the government's ability to undertake a subsequent prosecution of the witness. Accordingly, the same "public interest" test should be applied in this situation as well. Some of the considerations that may be relevant to the application of this test are set forth in JM 9-27.620.

4. **Supervisory Approval.** Finally, the prosecutor should secure supervisory approval before entering into a non-prosecution agreement. Prosecutors working under the direction of a United States Attorney must seek the approval of the United States Attorney or a supervisory Assistant United States Attorney. Departmental attorneys not supervised by a United States Attorney should obtain the approval of the appropriate Assistant Attorney General, and should notify the United States Attorney or Attorneys concerned. The requirement of approval by a superior is designed to provide review by an attorney experienced in such matters, and to ensure uniformity of policy and practice with respect to such agreements. This section should be read in conjunction with JM 9-27.640, concerning particular types of cases in which an appropriate Assistant Attorney General must concur in or approve an agreement not to prosecute in return for cooperation.

[updated February 2018]

9-27.620 - ENTERING INTO NON-PROSECUTION AGREEMENTS IN RETURN FOR COOPERATION—CONSIDERATIONS TO BE WEIGHED

In determining whether a person's cooperation may be necessary to the public interest, the attorney for the government, and those whose approval is necessary, should weigh all relevant considerations, including:

1. The importance of the investigation or prosecution to an effective program of law enforcement, or consideration of other national security or governmental interests;
2. The value of the person's cooperation to the investigation or prosecution;
3. The person's relative culpability in connection with the offense or offenses being investigated or prosecuted and his/her history with respect to criminal activity; and
4. The interests of any victims.

**Comment.** This section is intended to assist federal prosecutors, and those whose approval they must secure, in deciding whether a person's cooperation appears to be necessary to the public interest. The considerations listed here are not intended to be an exhaustive list or to require a particular decision in a particular case. Rather they are meant to focus the decision-maker's attention on factors that probably will be controlling in the majority of cases.

1. **Importance of Case.** Since the primary function of a federal prosecution in ordinary criminal cases is to enforce the criminal law, a federal prosecutor should not routinely or indiscriminately enter into non-prosecution agreements, which are, in essence, agreements not to enforce the law under particular conditions. Rather, he/she should reserve the use of such agreements for cases in which the cooperation sought concerns the commission of a serious offense, or prosecution is important in achieving effective enforcement of the criminal laws, including national security-related enforcement and prevention efforts. The relative importance or unimportance of the contemplated case is therefore a significant threshold consideration.

2. **Value of Cooperation.** An agreement not to prosecute in return for a person's cooperation binds the government to the extent that the person carries out his/her part of the bargain. *See Santobello v. New York* 404 U.S. 257 (1971); *Wade v. United States*, 504 U.S. 181 (1992). Since such an agreement forecloses enforcement of the criminal law against a person who otherwise may be liable to prosecution, it should not be entered into without a clear understanding of the nature of the quid pro quo and a careful assessment of its probable value to the government. In order to be in a position adequately to assess the potential value of a person's cooperation, the prosecutor should insist on an "offer of proof" or its equivalent from the person or his/her attorney. The prosecutor can then weigh the offer in terms of the investigation or prosecution in connection with which cooperation is sought. In doing so, he/she should consider such questions as whether the cooperation will in fact be forthcoming, whether the testimony or other information provided will be credible, whether it can be corroborated by other evidence, whether it will materially assist the investigation or prosecution, and whether substantially the same benefit can be obtained from someone else without an agreement not to prosecute. After assessing all of these factors, together with any others that may be relevant, the prosecutor can judge the strength of his/her case with and without the person's cooperation, and determine whether it may be in the public interest to agree to forego prosecution under the circumstances.

3. **Relative Culpability and Criminal History.** In determining whether it may be necessary to the public interest to agree to forego prosecution of a person who may have violated the law in return for that person's cooperation, it is also important to consider the degree of his/her apparent culpability relative to others who are subjects of the investigation or prosecution as well as his/her history of criminal involvement. Of course, ordinarily it would not be in the public interest to forego prosecution of a high-ranking member of a criminal enterprise in exchange for his/her cooperation against one of his/her subordinates, nor would the public interest be served by bargaining away the opportunity to prosecute a person with a long history of serious criminal involvement in order to obtain the conviction of someone else on less serious charges. These are matters with regard to which the attorney for the government may find it helpful to consult with the investigating agency or with other prosecuting authorities who may have an interest in the person or his/her associates.

4. **The Interests of Any Victims.** When considering whether it is in the public interest to forego prosecution, it is also important to consider the economic, physical, and psychological impact of the offense on any victims. In this connection, it is appropriate for the prosecutor to take into account such matters as the victim's desire for prosecution, the victim's age or health, and whether full or partial restitution has been made. In evaluating victim interests and determining whether to pursue a non-prosecution agreement, the prosecutor should be available to confer with the victim in furtherance of the Crime Victims' Rights Act (CVRA) and in accordance with the Attorney General Guidelines for Victim and Witness Assistance. The prosecutor should also be aware of any effect on the Department's ability to directly compensate victims of the underlying crimes and on the Crime Victims Fund.
See Comment to JM 9-27.230. For more information regarding the Department's obligations to victims, see the Crime Victims' Rights Act, 18 U.S.C. § 3771, the Victims' Rights and Restitution Act, 34 U.S.C. § 20141, and the Attorney General Guidelines for Victim and Witness Assistance.

It is also important to consider whether the person has a background of cooperation with law enforcement officials, either as a witness or an informant, and whether he/she has previously been the subject of a compulsion order under 18 U.S.C. §§ 6001-6003 or has escaped prosecution by virtue of an agreement not to prosecute. Such information regarding compulsion orders may be available by telephone from the Policy and Statutory Enforcement Unit in the Office of Enforcement Operations of the Criminal Division.

[updated July 2020]

In entering into a non-prosecution agreement, the attorney for the government should, if practicable, explicitly limit the scope of the government's commitment to:

1. Non-prosecution based directly or indirectly on the testimony or other information or cooperation that has been or will be provided; or
2. Non-prosecution within his/her district with respect to a pending charge, or to a specific offense then known to have been committed by the person.

**Comment.** The attorney for the government should exercise extreme caution to ensure that his/her non-prosecution agreement does not confer "blanket" immunity on the witness. Thus, for example, he/she should attempt to limit his/her agreement to non-prosecution based on the testimony or information provided. Such an "informal use immunity" agreement has two advantages over an agreement not to prosecute the person in connection with a particular transaction: first, it preserves the prosecutor's option to prosecute on the basis of independently obtained evidence if it later appears that the person's criminal involvement was more serious than it originally appeared to be; and second, it encourages the witness to be as forthright as possible since the more he/she reveals the more protection he/she will have against a future prosecution. To further encourage full disclosure by the witness, it should be made clear in the agreement that the government's forbearance from prosecution is conditioned upon the witness's testimony or production of information being complete and truthful, and that failure to testify truthfully may result in a perjury prosecution.

Even if it is not practicable to obtain the desired cooperation pursuant to an "informal use immunity" agreement, the attorney for the government should attempt to limit the scope of the agreement in terms of the testimony and transactions covered, bearing in mind the possible effect of his/her agreement on prosecutions in other districts.

It is important that non-prosecution agreements be drawn in terms that will not bind other federal prosecutors or agencies without their consent. Thus, if practicable, the attorney for the government should explicitly limit the scope of his/her agreement to non-prosecution within his/her district. If such a limitation is not practicable and it can reasonably be anticipated that the agreement may affect prosecution of the person in other districts, the attorney for the government contemplating such an agreement shall communicate the relevant facts to the appropriate United States Attorney and/or Assistant Attorney General. United States Attorneys may not make agreements that prejudice other litigating divisions, without the agreement of all affected divisions. *See also* JM 9-16.000 et seq. for more information regarding plea agreements.

Finally, the attorney for the government should make it clear that his/her agreement relates only to non-prosecution and that he/she has no independent authority to promise that the witness will be admitted into the Department's Witness Security program or that the Marshal's Service will provide any benefits to the witness in exchange for his/her cooperation. This does not mean, of course, that the prosecutor should not cooperate in making arrangements with the Marshal's Service necessary for the protection of the witness in appropriate cases. The procedures to be followed in such cases are set forth in JM 9-21.000.

[updated February 2018]

### 9-27.640 - AGREEMENTS REQUIRING ASSISTANT ATTORNEY GENERAL APPROVAL

The attorney for the government should not enter into a non-prosecution agreement in exchange for a person's cooperation without first obtaining the approval of the appropriate Assistant Attorney General when:

1. Prior consultation or approval would be required by a statute or by Departmental policy for a declination of prosecution or dismissal of a charge with regard to which the agreement is to be made; or
2. The person is:
   a. A high-level federal, state, or local official;
   b. An official or agent of a federal investigative or law enforcement agency; or
   c. A person who otherwise is, or is expected to become of major public interest.

**Comment.** JM 9-27.640 sets forth special cases that require approval of non-prosecution agreements by the appropriate Assistant Attorney General. Subparagraph (1) covers cases in which existing statutory provisions and

departmental policies require that, with respect to certain types of offenses, the Attorney General, the Deputy Attorney General, or an Assistant Attorney General be consulted or give his/her approval before prosecution is declined or charges are dismissed. *See e.g.*, JM 6-4.245 (tax offenses); JM 9-41.010 (bankruptcy frauds); JM 9-90.020 (national security-related offenses); (see JM 9-2.400 for a complete listing of all prior approval and consultation requirements). An agreement not to prosecute resembles a declination of prosecution or the dismissal of a charge in that the end result in each case is similar: a person who has engaged in criminal activity is not prosecuted or is not prosecuted fully for his/her offense. Accordingly, attorneys for the government should obtain the approval of the appropriate Assistant Attorney General before agreeing not to prosecute in any case in which consultation or approval would be required for a declination of prosecution or dismissal of a charge.

Subparagraph (2) sets forth other situations in which the attorney for the government should obtain the approval of an Assistant Attorney General, of a proposed agreement not to prosecute in exchange for cooperation. Generally speaking, the situations described will be cases of an exceptional or extremely sensitive nature, or cases involving individuals or matters of major public interest. In a case covered by this provision that appears to be of an especially sensitive nature, the Assistant Attorney General should, in turn, consider whether it would be appropriate to notify the Attorney General or the Deputy Attorney General.

[updated February 2018]

### 9-27.641 - MULTI-DISTRICT (GLOBAL) AGREEMENT REQUESTS

No district or division shall make any agreement, including any agreement not to prosecute, which purports to bind any other district(s) or division without the approval of the United States Attorney(s) in each affected district and/or the appropriate Assistant Attorney General .

The requesting district/division shall make known to each affected district/division the following information:

1. The specific crimes allegedly committed in the affected district(s) as disclosed by the defendant. (No agreement should be made as to any crime(s) not disclosed by the defendant.)
2. Identification of victims of crimes committed by the defendant in any affected district, insofar as possible.
3. The proposed agreement to be made with the defendant and the applicable Sentencing Guideline range.

See JM 16.030 for a discussion of the requirement for consultation with investigative agencies and victims regarding pleas.

[cited in JM 9-28.1000]

[updated February 2018]

### 9-27.650 - RECORDS OF NON-PROSECUTION AGREEMENTS

In a case in which a non-prosecution agreement is reached in return for a person's cooperation, the attorney for the government should ensure that the case file contains a memorandum or other written record setting forth the terms of the agreement. The memorandum or record should be signed or initialed by the person with whom the agreement is made or his/her attorney.

**Comment.** The provisions of this section are intended to serve two purposes. First, it is important to have a written record in the event that questions arise concerning the nature or scope of the agreement. Such questions are certain to arise during cross-examination of the witness, particularly since the existence of the agreement should be disclosed to defense counsel pursuant to the requirements of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). The exact terms of the agreement may also become relevant if the government attempts to prosecute the witness for some offense in the future. Second, such a record will facilitate identification by government attorneys (in the course of weighing future agreements not to prosecute, plea agreements, pre-trial diversion, and other discretionary actions) of persons whom the government has agreed not to prosecute.

The principal requirements of the written record are that it be sufficiently detailed that it leaves no doubt as to the

obligations of the parties to the agreement, and that it be signed or initialed by the person with whom the agreement is made and his/her attorney, or at least by one of them.

[updated February 2018]

### 9-27.710 - PARTICIPATION IN SENTENCING—GENERALLY

During the sentencing phase of a federal criminal case, the attorney for the government should assist the sentencing court by:

1. Attempting to ensure that the relevant facts and sentencing factors, as applied to the facts, are brought to the court's attention fully and accurately; and
2. Making sentencing recommendations in appropriate cases.

**Comment.** Sentencing is a critical stage in a case, and prosecutors play an indispensable role in advocating for just sentences. A prosecutor must be familiar with the guidelines generally and with the specific guideline provisions applicable to the case.A prosecutor should, as provided in JM 9-27.720 and 9-27.750, endeavor to ensure the accuracy and completeness of the information upon which the sentencing decisions will be based. In addition, as provided in JM 9-27.730, a prosecutor should offer recommendations with respect to the sentence to be imposed.

[added February 2018]

### 9-27.720 - ESTABLISHING FACTUAL BASIS FOR SENTENCE

In order to ensure that the relevant facts are brought to the attention of the sentencing court fully and accurately, the attorney for the government should:

1. Cooperate with the Probation Service in its preparation of the presentence investigation report;
2. Review the presentence investigation report;
3. Highlight critical facts and sentencing considerations in a way that accurately and compellingly supports the government's recommended sentence;
4. Make a factual presentation to the court when:
    a. Sentence is imposed without a presentence investigation and report;
    b. It is necessary to supplement or correct the presentence investigation report;
    c. It is necessary in light of the defense presentation to the court; or
    d. It is requested by the court;
5. Be prepared to substantiate significant factual allegations disputed by the defense; and
6. Provide an opportunity for victim allocution.

**Comment.**

1. **Cooperation with Probation Service.** The prosecutor should cooperate with the Probation Service in its preparation of the presentence report for the court. Under Rule 32 of the Federal Rules of Criminal Procedure, the report should contain information about the history and characteristics of the defendant, including any prior criminal record, financial condition, and any circumstances affecting the defendant's behavior that may be helpful in imposing sentence or in the correctional treatment of the defendant. While much of this information may be available to the Probation Service from sources other than the government, some of it may be obtainable only from prosecutorial or investigative files to which probation officers do not have access. For this reason, it is important that the attorney for the government respond promptly to Probation Service requests by providing the requested information whenever possible. The attorney for the government should also recognize the occasional desirability of volunteering information to the Probation Service especially in a district where the Probation Office is overburdened. Doing so may be the best way to ensure that important facts about the defendant come to its attention. In addition, the prosecutor should be particularly alert to the need to volunteer relevant information to the Probation Service in complex cases, since it cannot be expected that probation officers will obtain a full understanding of the facts of such cases simply by questioning the prosecutor or examining his/her files.

The relevant information can be communicated orally, or by making portions of the case file available to the probation officer, or by submitting a sentencing memorandum or other written presentation for inclusion in the presentence report. Whatever method he/she uses, however, the attorney for the government should bear in mind that since the report will be shown to the defendant and defense counsel, care should be taken to prevent disclosures that might be harmful to law enforcement interests.

2. **Review of Presentence Report.** Before the sentencing hearing, the prosecutor should always review the presentence report, which is prepared pursuant to Rule 32 of the Federal Rules of Criminal Procedure. Not only must the prosecutor be satisfied that the report is factually accurate, he or she must also pay attention to the initial determination of the base offense level. Further, the prosecutor must also consider all adjustments reflected in the report, as well as any recommendations for departure made by the probation office. These adjustments and potential departures can have a profound effect on the defendant's sentence. As advocates for the United States, prosecutors should be prepared to argue concerning those adjustments (and, if necessary, departures allowed by the guidelines) in order to arrive at a final result which adequately and accurately describes the defendant's conduct of offense, criminal history, and other factors related to sentencing.

3. **Emphasize Critical Facts and Arguments.** The attorney for the government should apply relevant sentencing factors to the facts in a way that most accurately and convincingly supports the government's recommended sentence. Judges are often presented with a substantial amount of information at sentencing. Justice is best served when prosecutors distill that information to its most salient points and provide judges with a persuasive framework through which to understand the significance of the case, the impact on the victims, the importance of general and specific deterrence, and the need for the requested punishment and rehabilitation plan to achieve a just result.

4. **Factual Presentation to Court.** In addition to assisting the Probation Service with its presentence investigation, the attorney for the government may find it necessary to make a factual presentation directly to the court. Such a presentation is authorized by Rule 32(i) of the Federal Rules of Criminal Procedure, which requires the court to "allow the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence."

Ordinarily, the need to address the court concerning the facts relevant to sentencing may arise in four situations: (a) when sentence is imposed without a presentence investigation and report; (b) when necessary to correct, supplement, or highlight portions of the presentence report; (c) when necessary in light of the defense presentation to the court; and (d) when requested by the court.

   a. **Furnishing Information in Absence of Presentence Report.** Rule 32(c) of the Federal Rules of Criminal Procedure authorizes the imposition of sentence without a presentence investigation and report, if the court finds that the record contains sufficient information to permit the meaningful exercise of sentencing authority under 18 U.S.C. § 3553. Imposition of sentence pursuant to this provision usually occurs when the defendant has been found guilty by the court after a non-jury trial, when the case is relatively simple and straightforward, when the defendant has taken the stand and has been cross-examined, and when it is the court's intention not to impose a prison sentence. In such cases, and any others in which sentence is to be imposed without benefit of a presentence investigation and report (such as when a report on the defendant has recently been prepared in connection with another case), it may be particularly important that the attorney for the government take advantage of the opportunity afforded by Rule 32(i) of the Federal Rules of Criminal Procedure, to address the court, since there will be no later opportunity to correct or supplement the record. Moreover, even if government counsel is satisfied that all facts relevant to the sentencing decision are already before the court, he/she may wish to make a factual presentation for the record that makes clear the government's view of the defendant, the offense, or both.

   b. **Correcting, Supplementing, or Highlighting Portions of the Presentence Report.** The attorney for the government should bring any significant inaccuracies or omissions to the Court's attention at the sentencing hearing, together with the correct or complete information. The attorney may also wish to highlight certain factual findings in making a sentencing recommendation to the court.

c. **Responding to Defense Assertions.** Having read the presentence report before the sentencing hearing the defendant or his/her attorney may dispute specific factual statements made therein. More likely, without directly challenging the accuracy of the report, the defense presentation at the hearing may omit reference to the derogatory information in the report while stressing any favorable information and drawing all inferences beneficial to the defendant. Some degree of selectivity in the defense presentation can reasonably be expected, and will be recognized by the court. There may be instances, however, in which the defense presentation, if not challenged, will leave the court with a mistaken view of the defendant or of the offense, because it is significantly different from that appearing in the presentence report. If this happens, the attorney for the government may respond by correcting factual errors in the defense presentation, pointing out facts and inferences, ignored by the defense, and generally reinforcing the objective view of the defendant and his/her offense as expressed in the presentence report.

d. **Responding to Court's Requests.** The court will request specific information from government counsel at the sentencing hearing. When this occurs, the attorney for the government should, of course, furnish the requested information if it is readily available and no prejudice to law enforcement interests will result from its disclosure.

5. **Substantiation of Disputed Facts.** In addition to providing the court with relevant factual material at the sentencing hearing, the attorney for the government should be prepared to substantiate significant factual allegations disputed by the defense. This can be done by making the source of the information available for cross examination or if there is good cause for nondisclosure of his/her identity, by presenting the information as hearsay and providing other guarantees of its reliability, such as corroborating testimony by others. *See United States v. Fatico*, 579 F.2d 707, 713 (2d Cir. 1978).

6. **Provide an Opportunity for Victim Allocution.** Pursuant to the Crime Victims' Rights Act of 2004, 18 U.S.C. § 3771(a)(4), a victim is entitled to address the court at sentencing regarding the impact of the crime on the victim. Prosecutors should notify victims of this opportunity in advance of sentencing with sufficient time for the victim to prepare a statement, and should notify the court of any victims wishing to make a statement.

[updated February 2018]

## 9-27.730 - MAKING SENTENCING RECOMMENDATIONS

The attorney for the government should make sentencing recommendations based on an individualized assessment of the facts and circumstances of each case and the history and characteristics of the defendant, without improper consideration of the defendant's race, religion, gender, ethnicity, national origin, sexual orientation, or political association, activities, or beliefs.

When making a sentencing recommendation, the attorney for the government should seek a sentence that:

1. Reflects the seriousness of the offense;
2. Promotes respect for the law;
3. Provides just punishment;
4. Affords deterrence to future criminal conduct by the defendant and others;
5. Protects the public from further crimes of the defendant;
6. Avoids unwarranted sentencing disparities between offenders with similar records who have been found guilty of similar conduct;
7. Offers the defendant an opportunity for effective rehabilitation; and
8. Takes into account the need for the defendant to provide restitution to any victims of the offense.

To avoid unwarranted disparities and to further the goal of uniform treatment of similarly situated defendants, the attorney for the government should first consider whether a sentence within the advisory sentencing guidelines range reflects an appropriate balance of the factors set forth above.  In the typical case, such a recommendation will be appropriate.  However, based on an individualized assessment of the facts and circumstances of the case, a prosecutor could conclude that a sentence above or below the guideline range better serves the public interest and the purposes of sentencing.  Before recommending a sentence that reflects a departure or variance from the advisory guideline range,

the attorney for the government must obtain supervisory approval.

**Comment.**  Congress has identified the factors courts must consider when imposing sentence.  These factors are set forth in 18 U.S.C. § 3553, and are listed above.  Absent a specific provision in a plea agreement, the attorney for the government is not legally obligated to make a recommendation at sentencing.  However, the interests of justice and the public interest often will be best served if the prosecutor handling the matter makes a recommendation as to an appropriate sentence.

**1.  Sentences Above or Below the Guidelines.**  Using the advisory guidelines as a touchstone, the attorney for the government should seek sentences that reflect an appropriate balance of the factors set forth in § 3553.  In the typical case, this balance will continue to be reflected by the applicable guidelines range, and prosecutors generally should advocate for a sentence within that range.  However, JM 9-27.730 recognizes that an individualized assessment of the facts and circumstances of a particular case could lead to the conclusion that a sentence above or below the advisory guidelines range would be more appropriate.   In such an event, prosecutors may make such recommendations with supervisory approval.

**2.  Balancing Sentencing Factors.**  The attorney for the government should recognize that not all of the factors set forth in § 3553 may be relevant or of equal importance in every case and that, for a particular offense committed by a particular offender, one of the purposes, or a combination of purposes, may be of overriding importance.

**3.  Conveying Sentencing Recommendations to the Court.**  The attorney for the government should be guided by the practice of the court concerning the manner and form in which sentencing recommendations are made.  If the government's position with respect to the sentence to be imposed is related to a plea agreement, that position must be made known to the court at the time the plea is entered.  In other situations, the government's position might be conveyed to the probation officer during the presentence investigation; to the court in the form of a sentencing memorandum filed in advance of the sentencing hearing; or to the court orally at the time of the hearing. Courts often find it helpful when federal prosecutors, in addition to their oral advocacy at the sentencing hearing, file with the court in advance of sentencing a memorandum setting forth the recommended sentence with supporting reasons.

**4.  Recommendations Required by Plea Agreements.**  As set forth in JM 9-27.400, prosecutors may enter into plea agreements that require the government to make – or not make – particular recommendations at sentencing.  If the prosecutor has entered into a plea agreement calling for the government to take a certain position with respect to the sentence to be imposed, and the defendant has entered a guilty plea in accordance with the terms of the agreement, the prosecutor must perform his/her part of the bargain or risk having the plea invalidated. *Machibroda v. United States*, 368 U.S. 487, 493 (1962); *Santobello v. United States*, 404 U.S. 257, 262 (1971).

**5.  Substantial Assistance.** When making a sentencing recommendation, the attorney for the government may consider whether, and to what extent, the defendant has provided substantial assistance in the investigation or prosecution of others.  The attorney for the government must obtain supervisory approval before filing any substantial assistance motion pursuant to section 5K.1.1 of the Sentencing Guidelines or Federal Rule of Criminal Procedure 35. This requirement is addressed in JM 9-27.400.

[updated February 2018]

9-27.745 - UNREASONABLE OR ILLEGAL SENTENCES

The attorney for the government should oppose attempts by the court to impose any sentence that is: (1) not supported by the law or the evidence; (2) unreasonable in light of 18 U.S.C. § 3553(a); (3) below the statutory minimum; (4) above the statutory maximum; or (5) based on a prohibited factor, such as race, religion, gender, ethnicity, national origin, sexual orientation, or political association, activities, or beliefs.

**Comment.** The prosecutor, with Departmental approval, may appeal a sentence which is unreasonable, unlawful or based on a prohibited factor.  The requirements for reporting and seeking approval to appeal adverse sentencing decisions are set forth in JM 9-2.170.

[updated February 2018]

9-27.750 - DISCLOSING FACTUAL MATERIAL TO DEFENSE

A. The attorney for the government should disclose to defense counsel, reasonably in advance of the sentencing hearing, any factual material not reflected in the presentence investigation report that he/she intends to bring to the attention of the court.

B. Comment. Due process requires that the sentence in a criminal case be based on accurate information. *See, e.g.*, *Moore v. United States*, 571 F.2d 179, 182-84 (3d Cir. 1978). Accordingly, the defense should have access to all material relied upon by the sentencing judge, including memoranda from the prosecution (to the extent that considerations of informant safety permit), as well as sufficient time to review such material and an opportunity to present any refutation that can be mustered. *See, e.g.*, *United States v. Perri*, 513 F.2d 572, 575 (9th Cir. 1975); *United States v. Rosner*, 485 F.2d 1213, 1229-30 (2d Cir. 1973), *cert. denied*, 417 U.S. 950 (1974); *United States v. Robin*, 545 F.2d 775 (2d Cir. 1976). JM 9-27.750 is intended to facilitate satisfaction of these requirements by providing the defendant with notice of information not contained in the presentence report that the government plans to bring to the attention of the sentencing court.

[updated February 2018]

9-27.760 - LIMITATION ON IDENTIFYING UNCHARGED THIRD-PARTIES PUBLICLY

In all public filings and proceedings, federal prosecutors should remain sensitive to the privacy and reputation interests of uncharged third-parties. In the context of public plea and sentencing proceedings, this means that, in the absence of some significant justification, it is not appropriate to identify (either by name or unnecessarily-specific description), or cause a defendant to identify, a third-party wrongdoer unless that party has been officially charged with the misconduct at issue. In the unusual instance where identification of an uncharged third-party wrongdoer during a plea or sentencing hearing is justified, the express approval of the United States Attorney and the appropriate Assistant Attorney General should be obtained prior to the hearing absent exigent circumstances. See JM 9-16.500. In other less predictable contexts, federal prosecutors should strive to avoid unnecessary public references to wrongdoing by uncharged third-parties. With respect to bills of particulars that identify unindicted co-conspirators, prosecutors generally should seek leave to file such documents under seal. Prosecutors shall comply, however, with any court order directing the public filing of a bill of particulars.

As a series of cases makes clear, there is ordinarily "no legitimate governmental interest served" by the government's public allegation of wrongdoing by an uncharged party, and this is true "[r]egardless of what criminal charges may . . . b[e] contemplated by the Assistant United States Attorney against the [third-party] for the future." In re Smith, 656 F.2d 1101, 1106-07 (5th Cir. 1981). Courts have applied this reasoning to preclude the public identification of unindicted third-party wrongdoers in plea hearings, sentencing memoranda, and other government pleadings. See Finn v. Schiller, 72 F.3d 1182 (4th Cir. 1996); United States v. Briggs, 513 F.2d 794 (5th Cir. 1975); United States. v Anderson, 55 F.Supp.2d 1163 (D. Kan 1999); United States v. Smith, 992 F. Supp. 743 (D.N.J. 1998); see also JM 9-11.130.

In most cases, any legitimate governmental interest in referring to uncharged third-party wrongdoers can be advanced through means other than those condemned in this line of cases. For example, in those cases where the offense to which a defendant is pleading guilty requires as an element that a third-party have a particular status (e.g., 18 U.S.C. § 203(a)(2)), the third-party can usually be referred to generically ("a Member of Congress"), rather than identified specifically ("Senator X"), at the defendant's plea hearing. Similarly, when the defendant engaged in joint criminal conduct with others, generic references ("another individual") to the uncharged third-party wrongdoers can be used when describing the factual basis for the defendant's guilty plea.

[updated February 2018]

‹ 9-24.000 - Requests For Special Confinement Conditions                    up                    9-28.000 - Principles of Federal Prosecution Of Business Organizations ›